**CITY OF AUGUSTA**

v.

**INHABITANTS of the TOWN
OF ALNA, et al.**

Supreme Judicial Court of Maine.

March 17, 1977.

Sanborn, Moreshead, Schade & Dawson by Peter T. Dawson, Augusta, for plaintiff.

Joseph M. Kozak, Asst. Atty. Gen., Dept. of Health & Welfare, Augusta, for Dept. of Human Services.

David B. Soule, Jr., Wiscasset, for Town of Alna.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

This case presents a question of statutory interpretation concerning the transition from the traditional "poor laws" which operated as a fundamentally municipal system (22 M.R.S.A. §§ 4451–4494) to the new program of "general relief" based on State reimbursement (22 M.R.S.A. §§ 4450–4508, as effective October 3, 1973).

Defendant Department of Human Services (Department) has appealed from a judgment, ordered entered by a Justice of the Superior Court (Kennebec County) pursuant to agreed facts, which required the Department to reimburse plaintiff City of Augusta (Augusta) for poor relief in the

amount of $4,281.03, plus interest and costs.[1]

We sustain the appeal.

The agreed facts are these.

From February 15 to August 14, 1972, Augusta furnished relief to a poor person whose settlement then, and at all times material to this litigation, was in the Town of Alna. In providing the relief Augusta incurred liabilities in 1972 to various businesses and other entities, but no actual disbursement of municipal funds in connection therewith was made until February 25, 1974. Thereafter, on March 8, 1974, Augusta notified the Town of Alna of the action taken by it on behalf of the poor person.

In the meantime, effective October 3, 1973, the statutory system of "poor laws" was repealed and replaced by the provisions currently in effect. Under repealed 22 M.R.S.A. § 4476,[2] Alna, as the municipality of the poor person's settlement, was liable for charges incurred on her behalf provided notice requirements had been met. In contrast, currently effective § 4499[3] imposes liability on the State for 90% of such amounts, regardless of settlement.

Here, Augusta has sued as defendants both Alna and the Department. The presiding Justice concluded that currently ef-fective Section 4499 controls this case and allows Augusta a right of recovery against the Department.[4]

Arguing in support of the decision by the presiding Justice, Augusta maintains that, having furnished relief before—but deferred payment until after—the change in statutory provisions, it may recover against the Department under current § 4499 because the law governing this case must be taken to be that in effect on the date of actual disbursement, February 25, 1974.

The Department disagrees, claiming that legal rights of the parties are determined by events occurring prior to the enactment of currently effective Section 4499—i. e., the actual furnishing of the relief by Augusta during the year 1972, not payment in February, 1974, of the bills incurred by the furnishing of the relief. In the Department's view, then, Augusta's only possible cause of action, assuming compliance with notice requirements and the statute of limitations, was against the Town of Alna under former § 4476 as in effect during 1972.

We agree with the Department's position.

On its face current § 4499 is ambiguous. In a single sentence it mentions

"[w]hen a municipality *incurs net costs* for furnishing such general relief"

1. When he made his order imposing liability on defendant Department, the presiding Justice entered judgment dismissing Augusta's action against the Town of Alna. Augusta has not appealed from that dismissal.

2. As here pertinent, that section provided:

"Overseers shall relieve persons destitute, found in their towns and having no settlement therein, and in case of death, decently bury them or dispose of their bodies according to section 2883; the expenses whereof and of their removal, incurred within 3 months before notice given to the town chargeable, may be recovered of the town liable by the town incurring them, in an action commenced within 2 years after the cause of action accrued and not otherwise; and may be recovered of their kindred in the manner provided in this chapter."

3. Section 4499 reads as follows:

"When a municipality incurs net costs for furnishing such general relief in any fiscal year in excess of .0006 of that municipality's state valuation as determined by the State Tax As-sessor in the statement filed by him as provided in Title 36, section 381, the Department of Health and Welfare shall reimburse the municipality for 90% of the amount in excess of such expenditures which the department considers to be reasonable and appropriate. For the purposes of this section, the municipal officers shall submit to the Department of Health and Welfare a monthly return on forms provided by the department stating the amount of net costs for furnishing general relief beginning at the end of the month in which the municipality's general relief expenditures exceed the ceiling formula stated in this section."

The Department of Health and Welfare has been renamed "Department of Human Services." See: 22 M.R.S.A. § 1.

4. There was evidence from which the presiding Justice could rationally have concluded that Augusta had furnished relief "in excess of .0006 of . . . [its] state valuation" during the fiscal year in question.

while simultaneously referring to those costs as "such *expenditures.*" (emphasis supplied) The second sentence contains the same juxtaposition of "net costs" and "expenditures." Thus, the textual language of § 4499 does not definitively indicate whether it contemplates reimbursement *as liability is incurred*—i. e., when the supplies are furnished—or conditions reimbursement on *actual disbursement*—that is, when the municipality pays the bill from the business or other entity which provided the supplies to the poor person.

■ In light of other factors, however, we conclude that § 4499 gears State reimbursement to municipal assumption of liability.

We find of some significance the phrase "*such* general relief" (emphasis supplied) in § 4499 itself. The word "such" requires an antecedent; in this case we read it as referring back to the new system of "general relief" embodied in 22 M.R.S.A. §§ 4450 et seq., and effective October 3, 1973, rather than to whatever relief the repealed "poor laws" provided.

Also of guidance is 22 M.R.S.A. § 4497 of the current law which imposes the duty of initial relief, subject to State reimbursement under § 4499, upon municipalities. Section 4497 first lists those persons whom the municipality must "cause . . . to be relieved at . . . [its] expense." It then requires the following:

"Overseers of the poor and other officers having charge of the administration of welfare funds shall keep full and accurate records of the names of indigent persons so relieved or supported, together with the amounts paid by them for such support and relief and shall make annual returns of the number of such persons supported and relieved, with the costs, to the Department of Health and Welfare."

Thus, a municipality is to report to the Department annually the number of people on its welfare rolls, whether or not actual disbursement has occurred, in addition to citing any "amounts paid" in connection with those recipients. Nowhere does § 4497 refer to a report of persons on the rolls before the statute's effective date but for whom actual disbursement has occurred in a year since that time.

In addition to the clues to meaning within the present statutory scheme, we find helpful the background of prior law.

The recently repealed § 4476, imposing ultimate liability on the town of settlement, derived from P.L.1821 c. CXXII, § 11 which, in turn, tracked its Massachusetts predecessor, Mass.P.L.1793 c. 59 § 9. Judicial interpretation of these statutes over a period of more than a century indicates that the key event for most purposes was the furnishing of pauper supplies rather than the actual payment therefor.

Now repealed § 4476, and its Maine and Massachusetts ancestors governing actions against the town of settlement, consistently referred to "expenses . . . incurred", just as present § 4499 provides State reimbursement "[w]hen a municipality incurs net costs". While we view such language in present § 4499 as creating the ambiguity developed above, it is clear that § 4476 and its predecessors were read by this Court as a clear reference to the municipality's incurring liabilities rather than its actual payment of the liabilities incurred. See: *Inhabitants of Greene v. Inhabitants of Taunton*, 1 Me. 228 (1821); *Inhabitants of Eastport v. Inhabitants of East Machias*, 40 Me. 280, 283 (1855); *Inhabitants of Fayette v. Inhabitants of Livermore*, 62 Me. 229, 233 (1873); *Inhabitants of Town of Sanford v. Inhabitants of Town of Hartland*, 140 Me. 66, 68, 34 A.2d 15 (1943). Further, it was on the date that supplies were furnished, not paid for, that applicable notice periods and statutes of limitations began to run. *Inhabitants of Readfield v. Inhabitants of Dresden*, 12 Mass. 316 (1815); *Inhabitants of Eastport v. Inhabitants of East Machias*, supra. Cf. *Inhabitants of West Gardiner v. Inhabitants of Hartland*, 62 Me. 246 (1873).

Most revealing are those cases in which statutory amendments affected the rights of the parties. Our review indicates that, without exception, this Court has always determined those rights

"in accordance with the law existing *at the time the supplies were furnished."* Inhabitants of City of Hallowell v. Inhabitants of City of Portland, 139 Me. 35, 39, 26 A.2d 652, 654 (1942) (emphasis supplied)

See also: *Inhabitants of Verona v. Inhabitants of Penobscot,* 56 Me. 11 (1868); *City of Augusta v. City of Waterville,* 106 Me. 394, 76 A. 707 (1910); *City of Rockland v. Inhabitants of Town of Lincolnville,* 135 Me. 420, 198 A. 744 (1938).

We find the provisions of former statutes, as thus clarified through judicial construction, pertinent for several reasons.

First, the continued use of the word "incurs" in present § 4499 indicates that the Legislature intended it to embrace the traditional meaning of "assume liability" (as opposed to "pay for"). We have frequently recognized that the Legislature looks to past judicial decisions as background for its enactments. *State v. Crommett,* 151 Me. 188, 193, 194, 116 A.2d 614 (1955). In these particular circumstances, the Legislature had available over 100 years of judicial construction to support its use of the verb "incurs."

■ Second, given the entrenched interpretation of such language, we should not abandon our traditional view unless the Legislature has plainly required it. We find no such legislative mandate in § 4499.

Third, we note the logic of our past construction, and of its application here.

Gearing statutes of limitation, notice periods and effective law to the date upon which relief is furnished provided a system which reflected economic reality and prevented abuse. Those ultimately liable were informed of their position in time to make provision for necessary revenues and take steps to minimize expenses. Those initially liable could not, by manipulating the date on which they actually disburse funds, control the rights of other parties.

■ By accepting the Department's reading of § 4499 as a continuation of this sensible, "accrual" method of poor relief, we alleviate the confusion of transition by eliminating overlap between the two laws. Were Augusta's version of § 4499 to prevail, Augusta would have two causes of action in connection with the same relief. Under § 4476 of prior law it could look to the Town of Alna, as municipality of settlement, for 100% reimbursement, since Augusta furnished the supplies while that law was in effect. Additionally, under Augusta's interpretation of § 4499, it could seek 90% reimbursement from the State. Although such an outcome is not beyond rationality, we reject it as the legislative purpose here, absent a plain direction by the Legislature to that effect.

We find final guidance in the purpose behind the passage of § 4499 and the other sections of the new "general relief" program codified in 22 M.R.S.A. §§ 4450 et seq. We view the enactment as a total abolition of the old system in favor of a fresh start in a new direction. No longer crucial is the settlement of the relieved poor person. Instead, the taxpayers of the entire State will bear most of the burden for relief furnished at the local level. Now mandated are municipal regulations governing eligibility and rules designed to implement procedural safeguards. In light of the departure from traditional practices represented by the new legislation, we find it unlikely that the Legislature intended to reach back to the past and include relief furnished before the effective date within its new program.[5]

The entry is:

*Appeal sustained.*

---

5. While acceptance of Augusta's view of the applicability of § 4499 would not render that statute retrospective in the pure sense under 1 M.R.S.A. § 302, since the rights and liabilities under now repealed § 4476 would not be disturbed, we find the result here reached consistent with the preference for prospectivity announced in § 302.