Ghyslaine BUREAU

v.

STAFFING NETWORK, INC.

Renea WARMAN

v.

OLSTEN KIMBERLY QUALITY CARE

Michael CAIAZZO

v.

WRIGHT EXPRESS, INC.

Supreme Judicial Court of Maine.

Argued April 3, 1996.

Decided June 21, 1996.

---

Daniel R. Mawhinney, Thompson & Bowie, Portland, for Staff Network.

Mark A. Beede (orally), Jennifer A. Holbrook, Robinson, Kriger, McCallum & Greene, P.A., Portland, for Kimberly Quality Care.

Robert C. Brooks (orally), William S. Wilson, Jr., Verrill & Dana, Portland, for Wright Express.

Alison A. Denham, Douglas, Whiting, Denham & Rogers, Portland, for Amicus Curiae, Nichols Portland Division of Parker Hannaford Corp.

John F. Lambert, Jr., Black, Lambert, Coffin & Rudman, Portland, for Amicus Curiae, Hannaford Bros.

John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, P.A., Bangor, for Amicus Curiae, Bowater Corp.

Thomas R. Downing (orally), Stephen Kottler, Hardy Wolf & Downing, P.A., Lewiston, for Ghyslaine Bureau.

Renea Warman, pro se, did not appear.

Patrick N. McTeague (orally), McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, for Michael Caiazzo.

Jeffrey L. Cohen, McTeague, Higbee, Macadam, Case, Watson & Cohen, Topsham, for Amicus Curiae, Maine AFL–CIO.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

WATHEN, Chief Justice.

At issue in this consolidated appeal[1] is the continued existence of the so-called "work search" requirement in determining injured workers' entitlement to benefits for partial incapacity pursuant to the Maine Workers' Compensation Act of 1992, 39–A M.R.S.A. § 101 *et seq.* (Supp.1995), and the interpretation of 39–A M.R.S.A. §§ 213, 214 (Supp. 1995). The employers of Ghyslaine Bureau and Renea Warman appeal from decisions of the Workers' Compensation Board relieving the employees from establishing the unavailability of post-injury employment in order to receive the maximum level of partial incapacity benefits provided in sections 213 and 214. The employer of Michael Caiazzo appeals from a Board ruling that the employee's involuntary termination for cause from post-injury employment did not constitute a "refusal" of a bona fide offer of work entitling the employer to suspend benefits pursuant to section 214(1)(A). We conclude that an employee seeking the maximum level of benefits for partial incapacity compensation pursuant to section 213, bears the initial burden of producing evidence that work is unavailable as a result of the injury. We therefore vacate the decisions of the Board with respect to *Bureau* and *Warman.* We agree with the Board, however, that termination for cause does not constitute a refusal of a bona fide offer of employment for purposes of section 214(1)(A). We therefore affirm the decision of the Board with respect to *Caiazzo.*

---

1. The cases were consolidated due to a mistaken impression that all three cases raised the work search issue. It became apparent after the briefs were submitted that the Caiazzo case did not raise the work search issue. We address the issues raised in that case in part II of this opinion.

## I.

Ghyslaine Bureau and Renea Warman suffered work-injuries after the effective date of the 1992 Act. Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885 (effective January 1, 1993). Bureau filed a petition for award and Warman filed a petition for review after her employer unilaterally reduced benefits to reflect seventy-five percent partial incapacity. In each case, a hearing officer granted the petition, concluding that although the employees were partially incapacitated by their injuries and had not established a good faith search for post-injury employment, they were entitled to the maximum amount of benefits provided by section 213. The respective hearing officers concluded that section 214 provided the "exclusive" method for determining an employee's entitlement to partial benefits and that "[n]either section 213 [nor] 214 require (or even suggest for that matter), as a condition precedent for the receipt of total incapacity benefits, a demonstration by the employee of a good faith search for work." We granted the employers' petitions for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp. 1995).

The provisions of the 1992 Act pertaining to partial incapacity are as follows:

While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee *is able to earn after the injury,* but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both. The board may in the exercise of its discretion extend the duration of benefit entitlement beyond 260 weeks in cases involving extreme financial hardship due to inability to return to gainful employment. This authority may not be delegated to a hearing officer and such decision must be made expeditiously.

39–A M.R.S.A. § 213(1) (Supp.1995). (Emphasis added).

While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

A. If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Security and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

B. If an employee is employed at any job and the average weekly wage of the employee is less than that which the employee received before the injury, the employee is entitled to receive weekly benefits under this Act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage that the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under section 211.

C. If an employee is employed at any job and the average weekly wage of the employee is equal to or more than the average weekly wage the employee received before the date of injury, the employee is not entitled to any wage loss benefits under this Act for the duration of the employment.

D. If the employee, after having been employed at any job pursuant to this subsection for 100 weeks or more, loses that job through no fault of the employee, the employee is entitled to receive compensation under this Act pursuant to the following.

(1) If, after exhaustion of unemployment benefit eligibility of an employee, the employment since the time of injury has not established a new wage earning capacity, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.

(2) If the employee has established a new wage earning capacity, the employee is entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of the termination of the employment of the employee, and the wages paid at the time of the injury. There is a presumption of wage earning capacity established for any employments totalling 250 weeks or more.

(3) If the employee becomes reemployed at any employment, the employee is then entitled to receive partial disability benefits as provided in paragraph B.

E. If the employee, after having been employed at any job following the injury for less than 100 weeks, loses the job through no fault of the employee, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.

. . . .

5. **Reasonable employment defined.** "Reasonable employment," as used in this section, means any work that is within the employee's capacity to perform that poses no clear and proximate threat to the employee's health and safety and that is within a reasonable distance from that employee's residence. The employee's capacity to perform may not be limited to jobs in work suitable to the employee's qualification and training.

39–A M.R.S.A. § 214 (Supp.1995).

■ Although the Act has been subject to repeated and frequent revision since first enacted in 1915, the provisions of the Act awarding partial incapacity benefits, including the present section 213, have consistently provided that employees must be compensated for their "incapacity to earn" and that partial benefits must be calculated with regard to what the employee is "able to earn" after the injury. *Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 928–29 (Me.1996); *see e.g.,* P.L.1915, ch. 295, § 15. Since 1922, we have construed the Act to permit a partially incapacitated employee to receive total benefits when as a result of the work-related injury the employee is unable to obtain post-injury employment within his or her work-restrictions. *Tripp,* 676 A.2d at 928–29; *Ray's Case,* 122 Me. 108, 110–11, 119 A. 191, 191–92 (1922). As we recently stated, "[t]he so-called "work search" rule was a judicially created doctrine designed to allocate the burdens of proof in cases when a partially incapacitated employee is seeking total incapacity benefits. The purpose of the rule is to aid in the calculation of a partially incapacitated employee's 'ability to earn.'" *Tripp,* 676 A.2d at 929.

■ We recently summarized the operation of the "work-search" rule in construing an earlier version of the Act.

On an employer's petition for review, the employer bears the burden of proof to establish the employee's earning capacity; however, when the employer shows that the employee has regained partial work-capacity, the employee bears a burden of production to show that work is unavailable to him or her as a result of the injury. *Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1009 (Me.1980). If the employee meets the burden of production, the employer's "never shifting" burden of proof may require it to show that it is more probable than not that there is available work within the employee's physical ability. *Id.* at 1009–10; *Poitras v. R.E. Glidden Body Shop,* 430 A.2d 1113, 1118 (Me.1981).

*Tripp,* 676 A.2d at 929 (quoting *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941–42 (Me.1996)). As we stated in *Tripp,* "[t]he only difference in cases involving an employee's petition for award or review, is that the employee seeking one-hundred percent benefits must bear the ultimate burden of proof to show that work is unavailable as a result of the injury." *Id.* at 929.

■ The hearing officers in the present cases concluded that section 213 provides a "general statement" concerning the duration and the amount of benefits, but that section 214 determines the entitlement to benefits in individual cases. By sidestepping the language of section 213, the decisions eliminate the work search requirement completely and preclude consideration of any residual wage-earning capacity of a partially incapacitated employee. By focusing exclusively on section 214, the decisions avoid any reference to the employees' ability to earn and preclude the employers from reducing benefits unless the employees actually return to work or refuse an offer of reasonable employment. We conclude on the basis of the continued use of the phrase "able to earn", the structure of the Act, and the legislative history, that the Legislature did not eliminate the necessity for applying the "work search" rule.

■ Ordinarily, we defer to an administrative agency's interpretation of a statute, particularly if, as in the case of the Workers' Compensation Board, the agency is charged with the responsibility of administering the statute. *See Curtis v. National Sea Prods.,* 657 A.2d 320, 322 (Me.1995); *LaRochelle v. Crest Shoe Co.,* 655 A.2d 1245, 1248 (Me. 1995); *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). Under the 1992 Act, such deference to the Board is particularly appropriate in light of the clearly stated intention to assign Maine's unique and persistent problems of compensation utilization and duration to "a new labor-management board, which will have virtually total control over the operation of the system."[2] Unfortunately, on the issue before us, hearing officers are not of one view, and the labor-management Board has divided evenly. *Bol-*

*shaw v. Redco, Inc.,* WCB # 94-00-15-03, slip op. 2 (Me.W.C.B. July 11, 1995). Thus, we are left with the language of the statute and history.

We reject the conclusion that section 214 is the exclusive source for an award of benefits. If that were true, there would be no benefits in the present cases because, as even the hearing officers concede, section 214 is silent concerning any award for employees who do not return to work following their injury. Although the decisions purport to apply section 214 alone in awarding benefits, section 213 is necessarily the source of their authority. Thus, the language referring to the employees' ability to earn cannot be avoided.

■ Section 213 is not essentially different from earlier versions of the statute. Based on the plain language of section 213, and its settled meaning, we conclude that a partially incapacitated employee seeking to obtain or retain maximum benefits bears the initial burden to establish the unavailability of work within their work-restrictions. We have held that "when statutory language has acquired a consistent and entrenched meaning through prior judicial decisions, we will not abandon our traditional interpretation of that language unless there is express statutory language plainly showing a legislative intent to abrogate those prior decisions." *Tripp,* 676 A.2d at 930-31. *See also Caron v. School Admin. Dist. 27,* 594 A.2d 560, 563 (Me.1991) ("In the absence of clear and explicit statutory language showing that the legislature intended a statute to modify case law, we will not interpret a statute to effect such a modification"); *City of Augusta v. Inhabitants of Town of Alna,* 370 A.2d 1381, 1384 (Me.1977).

2. Report of Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Findings of the Majority of the Blue Ribbon Commission 2 (August 31, 1992) [hereinafter Report, Findings]. Title 39-A was intended to address workers' compensation issues that are unique to Maine. As the Commission stated, "the Maine workers' compensation system is utilized in a different manner than virtually every other state's system. There is little question that Maine employees use the system more frequently than do employees in other states and stay in the system longer." *Id.*

at 1. The Act reflects not so much a legislative intent to comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions. *Id.* at 2-3. *Mathieu v. Bath Iron Works,* 667 A.2d 862, 866, n. 6 (Me.1995) ("[A]ll decisions regarding workers' compensation are developed through consensus by the new board of directors we're creating.... It's the only way management and labor can come together in this era.") (quoting Legis.Rec. S-60 (3rd Spec.Sess. 1992) (Statement of Sen. Esty)).

The parties concede that the legislative record is silent on the work search issue. As a matter of public policy, there may be merit in the employees' position that section 213 should be measured by actual earnings rather than the theoretical sum derived from the familiar phrase "able to earn." Whether a simpler rule would reduce the need for litigation and provide certainty in outcome without increasing employers' costs to unacceptable levels is a matter for consideration by the Board and the Legislature rather than this Court.[3]

## II.

Michael Caiazzo suffered a work-related injury in February 1993 while employed by Wright Express, Inc. (the employer). Caiazzo was totally incapacitated until April 1993, when he returned to part-time work for the employer. He was fired from his post-injury employment in August 1993 for "performance problems" unrelated to his work-injury. The employer paid Caiazzo benefits without prejudice until September 1993. Caiazzo filed petitions for award and review seeking restoration of benefits and the Board issued a provisional order pursuant to section 205(9)(D) restoring benefits pending resolution of the petition. 39–A M.R.S.A. § 205(9)(D) (Supp.1995). Mediation was held in May 1993 and the parties signed a written mediation agreement stating that Caiazzo suffered short-term total and continuing partial incapacity as a result of his work-injury. The Board granted Caiazzo's petition for award in January 1995, ruling that the mediation agreement was binding on the issue of whether a work-related injury occurred. The Board awarded total incapacity benefits pursuant to section 212 for the period prior to Caiazzo's return to work and partial benefits pursuant to section 213 and 214 for the period following his return to work until he

regained full work-capacity in February 1994. Concluding that section 214 is silent regarding employees who are fired for cause, the Board rejected the employer's argument that Caiazzo's termination from his post-injury employment should be treated as a "refusal" of an offer of reasonable employment, and we granted appellate review pursuant to 39–A M.R.S.A. § 322.

The employer contends that Caiazzo's termination for "personal problems" unrelated to his work-injury constituted a "refusal" of "reasonable employment from the previous employer" pursuant to subsection 214(1)(A) and was therefore grounds to suspend all benefits. The employer concedes that under prior law it was not entitled to suspend benefits when an employee was fired from post-injury employment for fault. *See Cote v. Great No. Paper Co.,* 611 A.2d 58, 59 (Me. 1992) (employee's termination for failure of a drug test did not constitute grounds for reducing benefits); *Cousins v. Georgia–Pacific Corp.,* 599 A.2d 73, 74 (Me.1991) (employee entitled to restoration of partial incapacity benefits despite having been fired for dishonesty; the reason for termination "is irrelevant if the employee sustained continued incapacity from a compensable injury").

The employer contends, however, that because section 214 is based on the Michigan statute, *see Statement of Fact,* L.D. 2364 (115th Legis.1991) ("[s]ection 214 is derived from Michigan § 418.301 and determines the amount of partial benefits that are due"), case law from that jurisdiction is controlling. Decisions of the Michigan courts addressing this issue have been influenced by the "favored work doctrine" that is part of their common law. That doctrine is designed to permit employers to reduce benefits by offering "favored," or "light-duty" work to injured employees, and to prevent malingering by

**3.** The most significant cost reduction in the contemplation of the Blue Ribbon Commission was to "limit[ ] the duration of benefits for those [employees] with permanent impairments that do not exceed 15% of the body...." Report, Findings at 2. The Commission also proposed other cost-saving measures, such as capping the maximum compensation rate, changing the basis of compensation from a percentage of "gross" wages to a percentage of "net" wages, limiting

the duration of death benefits, removing the periodic escalation of benefits in permanent total disability and death cases, requiring employees with post–1993 injuries to pay their own attorney fees, *etc.* Report, Report to the Maine Blue Ribbon Commission. Noticeably absent from the Blue Ribbon Report is any reference to changes or savings with reference to the "work search" rule.

encouraging employees to accept offers of favored work. *Bower v. Whitehall Leather Co.*, 412 Mich. 172, 312 N.W.2d 640, 643–44 (1981). The employer correctly contends that Michigan employers have been permitted to discontinue benefits in some situations when the employee is terminated for cause. *Calvert v. General Motors Corp.*, 120 Mich. App. 635, 327 N.W.2d 542, 546 (1982); *Scott v. Kalamazoo College & Travelers Ins. Co.*, 77 Mich.App. 194, 258 N.W.2d 191, 192–93 (1977).

■ The Michigan Supreme Court, however, has never held that section 418.301 is a full codification of the favored work doctrine, *see Pulver v. Dundee Cement Co.*, 445 Mich. 68, 515 N.W.2d 728, 732 (1994) (suggesting that section 418.301(5) is a "partial codification" of the doctrine), and the statutory language does not support that conclusion. Notwithstanding the common law of Michigan, we hold that an employee's termination for cause is not included among the statutory grounds for suspending benefits pursuant to subsection 214(1)(A). Considering the plain language of our statute, we are unable to equate an employee's termination for cause with a "refusal" of an "offer" of employment. Moreover, there is no legislative history that the Maine Legislature intended to adopt Michigan's common law.

■ The employer's remaining arguments are without merit. It contends that the Board had no jurisdiction to issue a provisional order of benefits pending resolution of a petition for review later than 21 days after the petition was filed. 39–A M.R.S.A. § 205(9)(D) (Supp.1995). There is no penalty in the statute for failure to enter a provisional award within twenty-one days after an employee files a petition for review. We do not create a remedy or penalty when a statute is silent regarding the sanction for failure of an agency to timely act. *Eastern Maine Med. Ctr. v. Maine Health Care Fin. Comm'n*, 601 A.2d 99, 101 (Me.1992). Moreover, it makes little sense to visit the error of a hearing officer on an employee who was the intended beneficiary of the hearing officer's action.

■ The employer next contends that it is entitled to recover overpayments made under a provisional order during the pendency of the petition for review. We have stated that the Board "has no authority to order the reimbursement of overpayments made prior to appeal other than that which is expressly granted in the Act." *LaRochelle*, 655 A.2d at 1246 (citing *American Mut. Ins. Co. v. Murray*, 420 A.2d 251, 252 (Me.1980)). In *LaRochelle*, we held that the employer's entitlement to recovery of overpayments "pending appeal" does not permit the employer to recover overpayments made during the pendency of a motion of findings of fact. *Id.* at 1247–48. Section 104–A has been carried forward into the new Act essentially unchanged. 39–A M.R.S.A. § 324 (Supp. 1995). There is nothing in the plain language of sections 205 or 324 to suggest that an employer may receive reimbursement for overpayments made during the pendency of a petition for review and we therefore conclude that no such reimbursement is available.

■ Finally, the employer contends that it was error for the Board to conclude that a mediation report signed by the parties is binding on factual issues. Section 313(3) provides that "[i]f an agreement is reached, the [mediation] report must state the terms of the agreement and must be signed by the parties and the mediator." 39–A M.R.S.A. § 313(3) (Supp.1995). The legislative history suggests that the Legislature intended mediation to replace litigation whenever possible. Recently, the full Board unanimously ruled that mediation agreements are binding. *Gross v. Hannaford Bros. Co.*, Dec. No. 95–01, WCB # 93–009561 (Me.1995). We agree with the Board that "[i]t would deprive Section 313 of meaning to allow a party to enter into a signed agreement and then refuse to comply with its terms. . . ." *Gross*, slip op. at 2.

The entries are:

The decisions of the Workers' Compensation Board in *Bureau v. Staffing Network, Inc.*, WCB–95–52, and *Warman v. Olsten Kimberly Quality Care*, WCB–95–84, are vacated and remanded to the Workers'

Compensation Board for further proceedings consistent with the opinion herein. The decision of the Workers' Compensation Board in *Caiazzo v. Wright Express, Inc.*, WCB–95–263, is affirmed.

All concurring.