STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-39

COMMERCIAL UNION
INSURANCE COMPANY,
a/k/a COMMERCIAL UNION
YORK INSURANCE
COMPANY, *et al.*,

      Petitioners

    v.

**DECISION AND ORDER**

MAINE EMPLOYERS' MUTUAL
INSURANCE COMPANY, *et al.*,

      Respondents

## I.    Introduction.

This matter is before the court on the petition of Commercial Union Insurance Company, a/k/a Commercial Union York Insurance Company (CU), via M.R. Civ. P. 80C. It seeks a review of final agency action in the form of a decision by an arbitrator appointed by the Bureau of Insurance which apportioned responsibility for workers' compensation payments between it and the respondent, Maine Employers' Mutual Insurance Co. (MEMIC). An administrative appeal under M.R. Civ. P. 80C to this court is the appropriate procedure to be followed when challenging such a decision. *Livingstone v. A-R Cable Services of Maine*, 2000 ME 18, ¶ 9, 746 A.2d 901, 904.

The parties have filed a record, their briefs, and oral argument was heard; accordingly, this matter is in order for disposition.

## II. History.

Before addressing the merits of the parties' respective positions in this case, a brief review of its history must be recounted.

Bruce Agren worked for Allen Rogers Limited doing business in Maine under the name "Dirigo Dowels." He was injured on the job on April 16, 1993. At the time his employer was insured for workers' compensation coverage by CU. On November 1, 1993, he was injured again, but the employer had coverage through MEMIC at that time.

On August 22, 1996, a mediator conducted a phone mediation on the issues of AWW (average weekly wage), work-relatedness, apportionment and fringe benefits. All parties participated in this process. As a result, the mediator found that the parties agreed on all issues, except fringe benefits. Among these agreements was the provision, relevant to the dispute here, that, "CU will pay 30% and MEMIC will pay 70%."[1]

On April 8, 1998, MEMIC demanded that an arbitrator be appointed pursuant to 39-A M.R.S.A. § 354(3) (1993) to "revise[d] and finalize[d]" the earlier apportionment agreement "informally entered into" so that it may have "a proper apportionment finding." The next day, April 9, 1998, the Bureau of Insurance, through its senior staff attorney, appointed Jonathan Reitman, Esq. as arbitrator. On April 23, 1998, CU objected to the appointment, claiming that the matters the arbitrator was to decide had already been decided by way of the apportionment agreement that was formalized on

---

[1] Neither party contests that this sentence refers to an agreement between them as to apportionment of responsibility for workers' compensation payments to Mr. Agren.

2

August 22, 1996, so that res judicata applied because the agreement had the force of a Workers' Compensation Board (Board) decree.

Near in time to these developments, namely on April 9, 1998, and April 17, 1998, three related pleadings were filed with the Board: on the former date, MEMIC's petition to determine average weekly wage, and on the latter date, Mr. Agren's petition for award as to CU, and his petition for award as to MEMIC. On January 21, 1999, MEMIC also filed a petition to determine extent of permanent injury.

On December 7, 1999, the Board's hearing officer (HO) granted all the petitions pending before her. As to apportionment between the two insurers for responsibility for payments to the employee, the HO made note of the August 22, 1996 agreement and the circumstance that none of the pleadings before her provided a procedural vehicle to adjust this allocation and, further, that there was no persuasive evidence "that a different allocation would be more appropriate."

On May 15, 2000,[2] the appointed arbitrator issued his decision, in which he determined that the August, 1996 mediation agreement was not binding on the parties "for all time," that the Board had not reached the question of apportionment, and, in the end, agreed with MEMIC's proposal that apportionment between the parties for payment of workers' compensation benefits should be a 50/50 split.[3]

---

[2] Apparently the delay between the arbitrator's appointment and his decision was occasioned by a stay pending action by the Board on the petitions before its HO.

[3] CU also proposed the 50/50 apportionment favored by MEMIC, but asserts it did so only as an alternative position if the arbitrator rejected the 30/70 division it supported. Apparently the rationale for this alternative position was explained in CU's brief presented to the arbitrator which was not included in the record before this court.

## III. Discussion.

The heart of the parties' dispute in this matter is the effect of the mediated agreement as to apportionment between them of responsibility for workers' compensation payments to the injured employee. The petitioner, CU, argues that the agreement is binding and final so that the arbitrator should not have been appointed by the Bureau of Insurance and that he erred in changing the apportionment responsibility between these two insurers. The respondent, MEMIC, asserts that the mediated agreement was temporary in nature and that the exclusive means of resolving apportionment disputes is by arbitration as required by statute.

In resolving this debate, it is necessary to examine the two statutes which have been applied by the Board and the Bureau of Insurance before this case made its way to this court. The first of these is 39-A M.R.S.A. § 313 (2000). It provides for mediation of disputes among employee, employer, and insurer with the objective of reaching agreement among them. The second is 39-A M.R.S.A. § 354(3) (1993). It governs the resolution of disputes between insurers as to apportionment responsibility when two or more insurers may be responsible for an injured worker's compensation.

The first of these statutes, 39-A M.R.S.A. § 313 (2000), mandates referral by the Board to mediation "upon filing a notice of controversy or other indication of controversy." *Id.* section 313(1) (2000). The mediator is then to determine the nature of the controversy and attempt to resolve it. *Id.* section 313(2) (2000). At the conclusion of mediation, the mediator is to file a written report with the Board listing the legal and factual issues in dispute and those that are agreed on. *Id.* section 313(3) (2000). Once done, all the parties and the mediator are to sign the report. *Id.* Any party, including

4

an insurer, participating in this mediation process must have authority to make decisions regarding the employee's claim. *Id.* section 313(5) (2000).

The parties in the case at bar and the injured employee participated in this statutorily authorized mediation process and agreed to a resolution of all but one controversy among them, including apportionment between these two insurers.[4] The agreement was signed and, apparently, sent to the Board as the statute requires. In the court's view, this process finally resolved any apportionment issue and the agreement entered into is binding on the parties.

The purpose of section 313 is obviously the same as the purpose of any mediation of a controversy or dispute, that is, to resolve quickly, finally, and inexpensively the issues pending among parties. Indeed, the Law Court has found that the legislative history of section 313 ". . . suggests that the Legislature intended mediation to replace litigation whenever possible." *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 590 (Me. 1996). Further, the Board and the Law Court have concurred that such mediation agreements are binding otherwise section 313 would be deprived of meaning. *Id.* (citing *Gross v. Hannaford Bros. Co.*, Dec. No. 95-01, WCB#93-009561 (Me. 1995)).

In this case there are sound reasons to hold these parties to their agreement, even though the respondent can point to a statute which is directly applicable to the resolution of apportionment disputes. The original parties in this case, including these

---

4 The record provided does not show what may have occurred among the parties and the Board pre-mediation, although there must have been either ". . . a filing of notice of controversy or other indication of controversy . . ." for a mediator to have been appointed by the Board. 39-A M.R.S.A. § 313(1) (2000). In any case, the parties have not argued either that there was an absence of controversy or that mediation was inappropriate in this case to resolve their controversies, including apportionment between the insurers.

two insurers, submitted their controversies to a mediator and, as a result, reached agreement on them. While such mediation may have been statutorily mandated, neither party reserved any issue for dispute as section 313 would permit. Nor did any party, as far as the court knows, ask that any agreement as to apportionment be temporary, or without prejudice to a later demand for arbitration under section 354. Indeed, as far as the record shows, nearly two years went by until MEMIC sought another means to determine apportionment.

It did so by turning to the Bureau of Insurance and demanding the appointment of an arbitrator as 39-A M.R.S.A. § 354(3) (1993) permits. That statute, in the text applicable at the time of this controversy, reads, in pertinent part, as follows:

> **3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with rules adopted by the Superintendent of Insurance, file a request for appointment of an arbitrator to determine apportionment of liability among the responsible insurers. The arbitrator's decision is limited to a choice between the submissions of the parties and may not be calculated by averaging. Within 30 days of the request, the Superintendent of Insurance shall appoint a neutral arbitrator who shall decide, in accordance with the rules adopted by the Superintendent of Insurance, respective liability among or between insurers. Arbitration pursuant to this subsection is the exclusive means for resolving apportionment disputes among insurers and the decision of the arbitrator is conclusive and binding among all parties involved. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act.

This language, the respondent argues, requires an appointed arbitrator to resolve disputes between insurers as to apportionment of responsibility to pay workers' compensation when, as here, there are two or more occupational injuries. *Id.* section 354(1). Supporting this view is the case of *Rosetti v. Land Reclamation*, 1997 ME 197, ¶¶ 1, 7, 704 A.2d 312, 313, 314 which holds that ". . . the Board has no authority to

6

determine apportionment issues between insurers. . . ." This is because the Workers' Compensation Act ". . . plainly provides that arbitration pursuant to section 354 is the exclusive means for resolving apportionment disputes among insurers. . . ." *Id.* at ¶ 7 (emphasis in original).

Based on this precedent, the argument is compelling that only an appointed arbitrator can decide apportionment controversies between insurers. A condition of this statutory process, however, is that there be a "dispute" between such insurers. Here, at the time the apportionment was set, there was no dispute; there was an agreement on this issue that was endorsed by a mediator and the parties themselves. Thus, no dispute arose until MEMIC, nearly two years after it had agreed to an apportionment ratio, found objection to it and demanded an arbitrator.

To allow a party to a lawful mediation agreement to renege, even when it can point to the existence of another forum with exclusive legal authority which could have resolved any debate as *ab initio* between the parties, would utterly vitiate the benevolent purposes of mediation. This is particularly so where the mediation process is created by the Legislature with the obvious purpose of eliminating or narrowing issues in workers' compensation cases so that controversies may be resolved by agreement. As noted, this statutory process is to replace litigation, of which arbitration shares a connatural character, "whenever possible." *Bureau,* 678 A.2d at 590.

Here it was possible to replace litigation because a mediator with the broad statutory authority to resolve a controversy in a workers' compensation case did so, with the apparent assent of these two parties neither of which, as noted, reserved any issues for other means of resolution or cited any matters for dispute. Had they done so as to apportionment, it is plain that such a dispute would have to be referred to an

7

appointed arbitrator as section 354 and *Rosetti*, 704 A.2d 312, 313, 314, plainly direct. In the absence of a dispute, however, there is no reason, and no exception or limitation that may be found in section 313, that bars insurers from entering into a binding agreement as to apportionment as may be facilitated by a mediator.

The respondent argues, however, that the agreement of August 22, 1996, was only temporary and that it was free to invoke mandatory arbitration at any time. It also contends that such agreements must always be considered temporary because an employee's circumstance can change so that an insurer's responsibility can be adjusted.

Several points defeat these arguments. First, nothing in the record or in the mediated agreement suggests that it was temporary or agreed to only pending arbitration. Second, it is of course true that an employee's circumstances can change, but that would be true whether the allocation was fixed by agreement or later by arbitration so that arbitration is not by virtue of its character a preferable, more permanent means to settle apportionment.[5] Last, and related to the latter point, nothing in the demand for arbitration suggests that the employee's circumstances had changed so that apportionment might be also. Indeed, it was not until 2000, after arbitration was sought, that a physician opined that the two injuries should be allocated on a 50/50 basis. Deposition of Gregory Leather, M.D., p. 14; Respondent's Brief, p. 7. That being so, there was no basis to seek a change in apportionment at the time an arbitrator was demanded and appointed, and no indication that there was an apportionment dispute except as to the bare demand for the appointment of an arbitrator on April 8, 1998, seeking revision and finalization of apportionment.

---

[5] In its demand for arbitration, MEMIC sought "finalization" of apportionment.

From all of this, the court concludes that the appointment of an arbitrator to revisit the apportionment agreement between these two parties was improper as there was no dispute for him to act on, the parties having agreed to an apportionment ratio. Accordingly, the petition must be granted and the arbitrator's decision vacated. That being so, there is no need to address the petitioner's further argument that the arbitrator's decision was substantially erroneous as to the apportionment ultimately selected.

## IV.    Conclusion.

The clerk shall make the following entry:

> Petition GRANTED; Decision of the Arbitrator dated May 15, 2000, is VACATED.

So ordered.

Dated: June __28__, 2001

John R. Atwood
Justice, Superior Court

9

Nancy A. Desjardin
Clerk of Courts
622-9357

Michele Garwood
Administrative Clerk

CLERK'S OFFICE
SUPREME JUDICIAL AND SUPERIOR COURTS
KENNEBEC COUNTY
95 STATE STREET
AUGUSTA, MAINE 04330

Date: JUNE 28, 2001

Docket No.   AP00-39, COMMERCIAL UNION VS. MAINE EMPLOYERS MUTUAL INS.

NOTICE TO COUNSEL:

Now that your case is finished you have ten (10) days after the 30 day appeal period, to claim your exhibits and/or record or they will be disposed of.  In the event your case is to be appealed, please notify our office.  At the conclusion of your appeal you will have 10 days to claim your exhibits and/or record.

Please note there will be no further reminders to claim your exhibits and/or record in your case.

   **RECORD

Date Filed __6/14/00__   __Kennebec__   Docket No. __AP00-39__
                          County

Action ___Petition for Review___              **J. ATWOOD**
                   80C


Commercial Union Insurance Co., et al   VS. Maine Employers'Mutual Insurance Co, et al

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Larry B. Goodglass, Esq.<br>Thomas R. Kelly, Esq.<br>P.O. Box 568<br>Portland, Maine 04112-0568 | -Richard Tucker, Esq.<br>P.O. Box 696<br>Bangor, Maine 04402-0696<br>_Wayne Whitney,Esq. (Bruce Agren)<br>P.O. Box 5000<br>Topsham, Maine 04086-5000<br><br>-Thomas Record, AAG<br>State House Sta. 6<br>Augusta Maine 04333 |

| Date of Entry | |
|---|---|
| 6/14/00 | Petition for Review Under M.R.Civ.P. 80C of Final Agency Action by the Maine Bureau of Insurance with attached exhibits 1-5, filed. s/Kelly, Esq. s/Goodglass, Esq. |
| 6/22/00 | Letter informing the Court that the Supt of Insurance will not be filing an appearance and that the record will be filed shortly filed. s/Silsby Asst Atty Gen |
| 6/23/00 | Affidavit of James C. with attached return receipts, filed. s/Hunt, Esq. |
| 6/29/00 | Letter entering appearance, filed. s/Tucker, Esq. |
| 6/30/00 | Letter entering appearance filed. s/Whitney Esq |
| 7/10/00 | Certification of Record, filed. s/Record. (in vault) |
| 7/12/00 | Notice of briefing schedule mailed to attys of record. |
| 8/17/00 | Motion for Enlargement of Time, filed. s/Kelly, Esq. |
| 8/22/00 | ORDER ON MOTION FOR ENLARGEMENT, Atwood, J.<br>Petitoner's brief is due September 1, 2000.<br>Copies mailed to attys of record. |
| 9/1/00 | Petitioner's Appellate Brief on Petition for Review Under M.R.Civ.P. 80C of Final Agency Action by the Maine Bureau of Insurance, filed. s/Kelly, Esq. (attachments "1-3") |
| 9/28/00 | Motion for Enlargement of Time, filed. s/Tucker, Esq. |
| 10/2/00 | MOTION FOR ENLARGEMENT OF TIME, Atwood, J. (dated 9/29/00)<br>Respondent's brief if due October 16, 2000 with subsequent briefings due wit in the time periods after service of the respondent's brief, as set forth in the briefing schedule dated July 12, 2000.<br>Copies mailed to attys of record. |