2006 ME 69

**Robert FLICKINGER**

v.

**OAKHURST DAIRY et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 24, 2006.
Decided: June 15, 2006.

David A. Chase II, Esq. (orally), Macdonald Chase & Dufour, Bangor, for employee.

James A. McCormack, Esq. (orally), Taylor McCormack & Frame LLC, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: SAUFLEY, C.J. and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Concurrence: SAUFLEY, C.J.

ALEXANDER, J.

[¶ 1] Oakhurst Dairy appeals a decision of a Workers' Compensation Board hearing officer (*Sprague, HO*), determining that Robert Flickinger was entitled to short-term total incapacity benefits for a work injury even though he was terminated after that injury for fighting and insub-

ordination. Oakhurst contends that 39–A M.R.S. § 214(1)(D), (E) (2005) prohibits an award of workers' compensation benefits when an employee loses post-injury employment due to fault. Because Flickinger was awarded total incapacity benefits pursuant to 39–A M.R.S. § 212 (2005), and because section 214 applies in cases involving partial incapacity, the fault provisions in section 214 do not govern this case. Accordingly, we affirm the award of benefits.

## I. CASE HISTORY

[¶ 2] Flickinger suffered an ankle injury on January 12, 2004, in the course of his employment as a truck driver for Oakhurst Dairy. The same day, he was limping outside when a co-worker pulled up in his truck and called him a wimp and a "New York pussy." Words were exchanged, and the co-worker got out of his truck. Flickinger shoved and spat on the co-worker. Afterward, Flickinger left a "rant" on his supervisor's answering machine, in which he threatened physical violence if Oakhurst refused to compensate him for his injury. He was fired that day for fighting and for insubordination.

[¶ 3] Flickinger received medical treatment for his injured ankle, paid for by Oakhurst, and he did not work from January 13 until May 18, 2004.

[¶ 4] Flickinger filed a petition for award of workers' compensation benefits. After a hearing, the hearing officer concluded that Flickinger was unable to work during the period from January 12 until May 18, 2004, and awarded him total incapacity benefits pursuant to section 212 of the Workers' Compensation Act. Oakhurst filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2005).

## II. LEGAL ANALYSIS

### A. Fault

[¶ 5] Oakhurst contends that 39–A M.R.S. § 214(1)(D) or (E)[1] prohibits an award of benefits when the employee is fired from a post-injury job due to fault. Subsections (1)(D) and (E) of section 214 apply to a determination of partial incapacity benefits when an employee has worked

---

1. Section 214 provides, in relevant part:

§ 214. Determination of partial incapacity
1. Benefit determination. While the incapacity is partial, the employer shall pay the injured employee benefits as follows.
. . . .
D. If the employee, after having been employed at any job pursuant to this subsection for 100 weeks or more, loses that job *through no fault of the employee*, the employee is entitled to receive compensation under this Act pursuant to the following.
(1) If, after exhaustion of unemployment benefit eligibility of an employee, the employment since the time of injury has not established a new wage earning capacity, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.
(2) If the employee has established a new wage earning capacity, the employee is

entitled to wage loss benefits based on the difference between the normal and customary wages paid to those persons performing the same or similar employment, as determined at the time of termination of the employment of the employee, and the wages paid at the time of the injury. There is a presumption of wage earning capacity established for any employments totaling 250 weeks or more.
(3) If the employee becomes reemployed at any employment, the employee is then entitled to receive partial disability benefits as provided in paragraph B.
E. If the employee, after having been employed at any job following the injury for less than 100 weeks, loses the job *through no fault of the employee*, the employee is entitled to receive compensation based upon the employee's wage at the original date of injury.
39–A M.R.S. § 214 (2005) (emphasis added).

for a period of time after an injury and loses the post-injury job "through no fault of the employee."

[¶ 6] Despite Oakhurst's argument that Flickinger had suffered only partial incapacity, the hearing officer awarded him total incapacity benefits pursuant to 39–A M.R.S. § 212.[2] Section 212 pertains to compensation for total incapacity, and does not contain any language regarding fault.

[¶ 7] There is no reason to invoke section 214 in this case because its provisions apply only when the employee has partial work capacity after an injury.[3] We discern no legislative intent that the fault provisions of section 214 should somehow be imported into section 212, particularly when, as in this case, there is an express finding that the employee was unable to work.

## B. Refusal of Reasonable Employment

[¶ 8] When Flickinger started work at Oakhurst, he signed Oakhurst's transitional, modified work policy, whereby Oakhurst offered to provide transitional work to its employees if injured and Flickinger agreed to accept that work. Oakhurst contends that this policy constitutes an ongoing, bona fide offer of reasonable employment pursuant to 39–A M.R.S. § 214(1)(A) (2005)[4] and that Flickinger, in effect, refused that offer when he was fired for fighting and insubordination. Because section 214 does not apply, we reject this argument.[5]

The entry is:

The decision of the hearing officer is affirmed.

SAUFLEY, C.J., concurring.

[¶ 9] I concur in the Court's conclusion that the "fault" language of 39–A M.R.S. § 214 (2005) does not apply to 39–A M.R.S. § 212 (2005) determinations. I also concur in the court's determination that the hearing officer did not err in awarding short-term total incapacity bene-

2. Title 39–A M.R.S. § 212 (2005) provides, in relevant part:

§ 212. Compensation for total incapacity

1. Total incapacity. While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 80% of the employee's after-tax average weekly wage, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the incapacity.

Any employee who is able to perform full-time remunerative work in the ordinary competitive labor market in the State, regardless of the availability of such work in and around that employee's community, is not eligible for compensation under this section, but may be eligible for compensation under section 213.

3. Oakhurst contends that the hearing officer's finding that Flickinger was totally incapacitated is not supported by competent evidence, and that the record compels a finding that Flickinger possessed partial capacity to work after the injury. The finding of total incapacity was within the province of the hearing officer, and we decline to disturb it. 39–A M.R.S. § 318 (2005).

4. Title 39–A M.R.S. § 214(1)(A) (2005) provides:

§ 214. Determination of partial incapacity

1. Benefit determination. While the incapacity is partial, the employer shall pay the injured employee benefits as follows.

A. If an employee receives a bona fide offer of reasonable employment from the previous employer or another employer or through the Bureau of Employment Services and the employee refuses that employment without good and reasonable cause, the employee is considered to have voluntarily withdrawn from the work force and is no longer entitled to any wage loss benefits under this Act during the period of the refusal.

5. In *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 589–90 (Me.1996), we expressly held that an employee's termination for cause does not constitute a refusal of reasonable employment pursuant to section 214(1)(A).

fits here, where the employee was injured before his bad behavior and where the record supports the hearing officer's determination that the employee could not work at all during a four-month period.

[¶ 10] I write separately to note that, in this area of law created entirely by legislative action, issues related to termination for fault generate substantial confusion and litigation. Employees and employers alike would be well-served by legislative action clarifying the ramifications, if any, of an employee's termination caused by his or her own fault.