2004 ME 16

**Joseph P. LYDON**

v.

**SPRINKLER SERVICES et al.**

Supreme Judicial Court of Maine.

Argued: March 12, 2003.
Decided: Feb. 12, 2004.

James J. MacAdam, Esq. (orally), Mac-Adam Law Offices, P.A., Portland, for employee.

Robert W. Bower Jr., Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

Dissent: CLIFFORD and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] We are called upon to determine whether a physician may be appointed to serve as an independent medical examiner in a workers' compensation proceeding, pursuant to 39–A M.R.S.A. § 312 (2001), if that physician has performed examinations of other employees at the request of an employer, insurer, or employee, pursuant to 39–A M.R.S.A. § 207 (2001 & Supp. 2003). In the matter before us, a hearing officer of the Workers' Compensation Board (*McCurry, HO* ), denied Joseph Lydon's petition for award and did so in reliance on the opinion of an independent medical examiner who had conducted examinations of other employees pursuant to 39–A M.R.S.A. § 207 within fifty-two weeks prior to examining Lydon. *See* 39–A M.R.S.A. § 312(2). We conclude that the physician was ineligible to serve as an independent medical examiner and vacate the decision.

## I. BACKGROUND

[¶ 2] In August 2001, Lydon filed petitions for award and to fix medical payment for an alleged work-related back injury on April 7, 1999, during his employment with Sprinkler Services. Lydon did not need medical care immediately after the alleged injury, but experienced problems in early May and underwent back surgery on May 27, 1999, to remove a synovial cyst.

[¶ 3] The parties' experts disagreed as to whether the cyst or the aggravation of Lydon's back injury were work related. As a result of this dispute, Sprinkler Services sought the appointment of an independent medical examiner (IME) pursuant to 39–A M.R.S.A. § 312. When the parties could not agree on an IME, the hearing officer appointed an IME to examine Lydon. *See* 39–A M.R.S.A. § 312(3) (2001).

[¶ 4] Lydon objected to the physician appointed as the IME, alleging that the doctor had performed a number of section 207 examinations on behalf of employers in

the preceding fifty-two weeks and was therefore not sufficiently independent. In response to this objection, the hearing officer granted Lydon's request to serve the IME with interrogatories requesting information concerning the number of section 207 examinations the doctor performed in the preceding fifty-two weeks, "who he did them for and the amount of money that he was paid."

[¶ 5] The IME declined to respond to the interrogatories, was not forthcoming during his subsequent deposition, and refused to answer most of the questions concerning the sources of his professional income that were related to workers' compensation. He did, however, give limited answers at the hearing, estimating that 20% of his practice is devoted to performing medical examinations for legal purposes, which included both section 207 examinations and section 312 examinations, and which accounted for approximately 10% of his income (with no indication of the amount of his income). He declined to give an approximation of the proportion of the examinations devoted to section 207 examinations as opposed to section 312 examinations. He declined to give even minimal information concerning how much money he earned in the preceding year for performing section 207 examinations at an employer's request.[1]

[¶ 6] Notwithstanding the doctor's testimony that he had performed numerous section 207 examinations within the past year, and notwithstanding his refusal to provide information necessary to a separate assessment of his possible conflicts of interest, the hearing officer ultimately re-

lied on the IME's opinion in denying Lydon's petition.[2] In so doing, the hearing officer concluded in essence that neither the workers' compensation statutes nor the Workers' Compensation Board Rules automatically preclude a doctor who has performed any section 207 examinations within the preceding year from acting as an IME.

[¶ 7] The hearing officer denied Lydon's motion for findings of fact and conclusions of law, and we granted his petition for appellate review.

## II. DISCUSSION

[¶ 8] Independent Medical Examiners are governed by 39–A M.R.S.A. § 312. IMEs must be "the most qualified and ... highly experienced and competent in their specific fields of expertise." *Id.* § 312(1). When opposing parties agree on the selection of the IME, the IME's opinion is binding. *Id.* § 312(7). When the parties cannot agree, the Board may appoint an IME and is then required to adopt the IME's findings in the absence of clear and convincing evidence to the contrary. *Id.* § 312(3), (7).

[¶ 9] A primary purpose of the IME system is to prevent "doctor shopping" and to reduce litigation. As one legislator remarked:

> [T]he new law clearly does establish the IME and does establish the criteria for the IME so that it may not be rebutted other than by clear and convincing evidence. That is a higher standard, it does away with doctor shopping, there would be much more doctor shopping

---

1. The record contains a report prepared by the Board, suggesting that the IME had performed 115 section 207 examinations in 2001, which was the second highest number of section 207 examinations performed by IMEs for that year.

2. Although the hearing officer expressed frustration with the recalcitrance of the IME and his uncooperative responses at the hearing, he concluded that he was required to rely on the physician's opinion.

under the old law, there would be much more running to different experts and having a contentious type of situation where the insurers hire experts and the employee hires experts. The whole process is attempting to change this method of doing business.

7 Legis. Rec. H–61 (3rd Spec.Sess.1992) (Statement of Rep. Hastings). We have noted the importance of the integrity of the IMEs in other opinions. "Because of the significance of the IME's role, independence, integrity, and absence of conflict of interest are important." *Laskey v. S.D. Warren Co.*, 2001 ME 103, ¶ 18, 774 A.2d 358, 363.[3]

[¶ 10] In order to assure the independence of independent medical examiners, the Legislature has restricted those who may serve in that capacity. *See* 39–A M.R.S.A. § 312(2) (2001).[4] There are three primary restrictions. First, the employee's "treating health care provider" may not act as an IME in that employee's case. *Id.* Second, the doctor "may not have treated the employee with respect to the injury for which the claim is being made." *Id.* And third, "[a] physician who

has examined an employee ... in accordance with section 207 during the previous 52 weeks" may not serve as an IME. *Id.*

[¶ 11] The question before us is whether the third restriction applies only to a section 207 examination of the employee whose case is at issue or applies to a section 207 examination of *any* employee. The analysis centers on the word "an" in the last sentence of section 312(2), specifically: "A physician who has examined *an* employee at the request of an insurance company, employer or employee in accordance with section 207 during the previous 52 weeks is not eligible to serve as an independent medical examiner." *Id.* § 312(2) (emphasis added). Lydon argues that "an employee" means "*any*" employee, but Sprinkler urges us to conclude that the term "an employee," in this context, must be read to refer to the specific employee whose case is at issue. If, as Lydon argues, a physician is ineligible for appointment as an IME if he or she has performed *any* section 207 examinations within the preceding year, then the physician in the matter before us was not eligi-

---

**3.** The IME system was initially enacted in 1991 as part of former title 39 and has been carried forward into title 39–A. P.L.1991, ch. 615, § D–19, *codified at* 39 M.R.S.A. § 92–A, *renumbered by* Revisor's Report 1991 §§ 59, 60, *codified at* 39–A M.R.S.A. § 92–B, *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8, *codified at* 39–A M.R.S.A. § 312. The legislative history of the former statute reflects a similar legislative policy to prevent "doctor shopping" and to insure the appointment of IMEs who are free of conflicts of interest. 5 Legis. Rec. H–39 (1st Spec.Sess.1991) (commenting on House Amend. A to L.D.1981, No. H–768) (115th Legis.1991). *See also* 5 Legis. Rec. S–67 (1st Spec.Sess.1991) (discussing Sen. Amend. A to House Amend. A to L.D.1981, Nos. S–477, H–768 (115th Legis.1991)).

**4.** In its entirety, subsection 2 reads as follows:
2. Duties. An independent medical examiner shall render medical findings on the

medical condition of an employee and related issues as specified under this section. The independent medical examiner in a case may not be the employee's treating health care provider and may not have treated the employee with respect to the injury for which the claim is being made or the benefits are being paid. Nothing in this subsection precludes the selection of a provider authorized to receive reimbursement under section 206 to serve in the capacity of an independent medical examiner. A physician who has examined *an* employee at the request of an insurance company, employer or employee in accordance with section 207 during the previous 52 weeks is not eligible to serve as an independent medical examiner.
39–A M.R.S.A. § 312(2) (2001) (emphasis added).

ble and the hearing officer's reliance on his opinion was in error.

[¶ 12] We must begin our analysis by addressing the plain language of the statute. *See Jordan v. Sears, Roebuck & Co.*, 651 A.2d 358, 360 (Me.1994). Although Sprinkler argues that it has been a common practice for doctors who perform section 207 examinations to serve regularly as IMEs, we cannot defer to the practice in the field. In this highly regulated area, the Legislature's language and intent must control. We conclude that the distinct uses of the definite and indefinite articles make the Legislature's intent clear. A review of the three restrictions discloses the explicitly different treatment. The independent medical examiner in a case

(1) "may not be *the* employee's treating health care provider,"

(2) "may not have treated *the* employee with respect to the injury" at issue, and

(3) may not be a physician who has examined "*an* employee . . . in accordance

with section 207 during the previous 52 weeks."

39–A M.R.S.A. § 312(2) (emphasis added).

[¶ 13] The definite article "*the* (as opposed to *a, an* ) refers to: . . . a particular person, thing, or group." WEBSTER'S NEW WORLD COMPACT DESK DICTIONARY AND STYLE GUIDE 499 (2d ed.2002). The word "an," on the other hand, when used as an indefinite article, refers to "each; any one." *Id.* at 17. In this context, because "*the* employee" certainly refers to the specific employee whose case is at issue, the evident change from the definite article to the use of the indefinite article "an employee" in the final prohibition must reflect a legislative intent to refer not to the employee at issue, but to "any" employee. In other words, by its plain language, the Legislature has decreed that any physician who has examined *any* employee pursuant to section 207 within the past year is ineligible to serve as an independent medical examiner.

[¶ 14] We reach this conclusion notwithstanding the rule promulgated by the Workers' Compensation Board,[5] in which

---

5. Specifically, Workers' Compensation Board Rule ch. 4, § 2(6) provides:

   6. Disqualification and Disclosure in Individual Cases.

   A. The independent medical examiner in a case may not be the employee's treating health care provider and may not have treated the employee with respect to the injury for which the claim is being made or benefits are being paid.

   B. A physician who has examined *the* employee at the request of an insurance company, employer, or employee in accordance with 39–A M.R.S.A. § 207 during the previous 52 weeks is not eligible to serve as the independent medical examiner.

   C. The independent medical examiner must disclose potential conflicts of interest that may result from a relationship(s) with industry, insurance companies, and labor groups. A potential conflict of interest exists when the examiner, or someone in their immediate family, receives

something of value from one of these groups in the form of an equity position, royalties, consultantship, funding by a research grant, or payment for some other service. If the independent medical examiner performs equivalent examinations as an employee of another organization, potential conflicts of interest may arise from that organization's contracts with industry, insurance companies, and labor groups. The Executive Director or the Executive Director's designee shall determine whether any conflict of interest is sufficiently material as to require disqualification in the event of initial disclosure. In the event an undisclosed conflict of interest is revealed during the hearing process, the hearing officer may disqualify the independent medical examiner and order a new examiner which shall be assigned in accordance to this rule.

Me. W.C.B. Rule, ch. 4, § 2(6) (emphasis added) (as amended effective November 1, 2001). Section 152(2) provides authority to the

the Board excludes from consideration as an IME those physicians who have "examined *the* employee ... in accordance with 39–A M.R.S.A. § 207" rather than "*an* employee" as excluded by the statute. Me. W.C.B. Rule, ch. 4 § 2(6)(B) (emphasis added). Through the use of the definite article, the Board rule appears to apply the section 207 exclusion only to those physicians who had examined the employee at issue.[6]

[¶ 15] Because the focus is on a single word—"the" rather than "an"—it is possible that the language contained in the Board's rule represents a scrivener's error or typographical error. To the extent that it was intended as a substantive change, however, it contradicts the language of the statute and therefore exceeds the authority of the Board. *See Beaulieu v. Me. Med. Ctr.*, 675 A.2d 110, 111 (Me.1996) (invalidating Board rule precluding retroactive application of statute governing inclusion of fringe benefits in average weekly wage when rule was inconsistent with the statute).

[¶ 16] Finally, because we have concluded that the physician was ineligible to serve as an IME, we need not reach Lydon's argument that the hearing officer erred in relying on the physician's opinion given the physician's substantial failure to provide the hearing officer and the parties with relevant information relating to a potential conflict of interest.

---

Board to "adopt rules to accomplish the purposes of [the] Act," including rules that "define terms, prescribe forms and make suitable orders of procedure to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under [the] Act." 39–A M.R.S.A. § 152(2) (2001). Section 312(1) provides, in pertinent part, that the Board "shall ... adopt any rules considered necessary to effectuate the purposes of this section." 39–A M.R.S.A. § 312(1).

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with this opinion.

CLIFFORD, J., with whom LEVY, J., joins concurring in part and dissenting in part.

[¶ 17] I concur in the Court's conclusion that the decision of the hearing officer must be vacated, but I disagree that Me. W.C.B. Rule, ch. 4, § 2(6)(B) violates 39–A M.R.S.A. § 312(2) (2001). I would vacate the decision because, in my view, the hearing officer should not have relied on the opinion of the independent medical examiner to deny Joseph Lydon's petition for award.

I. CONSTRUING THE STATUTE

[¶ 18] Disqualification of an independent medical examiner is covered by Me. W.C.B. Rule, ch. 4, § 2(6), which provides in pertinent part:

6. Disqualification and Disclosure in Individual Cases.

A. The independent medical examiner in a case may not be the employee's treating health care provider and may not have treated the employee with respect to the injury for which the

---

**6.** The Board rules were amended in November 2001, while the proceeding was pending before the Board. *See* Me. W.C.B. Rule, ch. 4, § 2(6) (1996) (amended effective November 1, 2001). Although, arguably, the language of the former rule applies to this case, *see Weeks v. Allen & Coles Moving Sys.*, 1997 ME 205, ¶ 6, 704 A.2d 320, 322, the amendment concerns Board procedure and does not materially affect the issue in this appeal, and the parties have not asserted that the former rule should apply.

claim is being made or benefits are being paid.

B. A physician who has examined the employee at the request of an insurance company, employer, or employee in accordance with 39–A M.R.S.A. § 207 during the previous 52 weeks is not eligible to serve as the independent medical examiner.

[¶ 19] The Court concludes that section 2(6)(B) of chapter 4 violates 39–A M.R.S.A. § 312(2). The Court reads section 312(2) as unambiguously precluding for eligibility to serve as an IME a physician who, during the previous year, has examined *any* employee in accordance with section 207 of title 39–A. I disagree.

[¶ 20] In my view, the language of section 312(2) is not free of ambiguity and is susceptible of more than one interpretation. *See Competitive Energy Servs., LLC v. Pub. Utils. Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046 (statute ambiguous if language is reasonably susceptible of different interpretations). The "an employee" language in section 312 can be construed as referring to the specific employee whose case is before the Board, or to *any* employee. I would agree with the Court that the rule would violate section 312 if, in section 312(2), the Legislature

had chosen to use the language "any employee," as opposed to "an employee." [7]

[¶ 21] In promulgating chapter 4, section 2(6) of its rules, the Workers' Compensation Board construed section 312(2) as disqualifying a physician from eligibility as an independent medical examiner only if the physician treated or examined the employee whose case was before the Board. We defer to the Board's construction of the Workers' Compensation Act "unless the statute plainly compels a different result." *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994) (internal quotations omitted). This rule is in keeping with the general rule that the construction of a statute by the administrative agency over which it has jurisdiction is entitled to great deference and will be upheld "unless the statute plainly compels a contrary result." *Competitive Energy Servs.,* 2003 ME 12, ¶ 15, 818 A.2d at 1046 (internal quotations omitted); *Wood v. Superintendent of Ins.,* 638 A.2d 67, 70 (Me.1994) (internal quotations omitted).

[¶ 22] Moreover, assuming *arguendo,* that the statute had to be interpreted contrary to the interpretation given to it by the Board, the result would limit the number of physicians who possess the qualifications to testify about workplace injuries, who would be eligible to qualify as IMEs.

---

**7.** The Act frequently uses the phrase "an employee" in a way that can be construed as referring to a specific employee and not "any employee." For example, the basic entitlement provision of 39–A M.R.S.A. § 201 (2001) provides: "If *an* employee ... receives a personal injury arising out of and in the course of employment ... *the* employee must be paid compensation and furnished medical and other services ...." 39–A M.R.S.A. § 201(1) (emphasis added); *see also* 39–A M.R.S.A. § 201(6) (stating that "[i]f *an* employee suffers a work-related injury ... *the* employee's rights and benefits ... must be determined by the law in effect at the time of the prior injury") (emphasis added). The section 202 "intoxication defense" applies to *"an* employee when it is proved that the injury or death was occasioned by *the* employee's willful intention to bring about the injury or death of *the* employee or of another." 39–A M.R.S.A. § 202 (2001) (emphasis added). Section 206 also uses "an employee" and "the employee" in a similar manner. 39–A M.R.S.A. §§ 206, 312(2) (2001 & Supp.2003). Section 207, which provides for medical examinations for purposes of litigation, applies to *"[a]n·* employee being treated by a health care provider of *the* employee's own choice." 39–A M.R.S.A. § 207 (Supp.2003) (emphasis added). There are numerous other instances in the Act where the term "an employee" can reasonably be understood to mean a specific employee, including section 312(2).

Maine is not a large state, and does not have an unlimited number of available physicians. The Board's construction, in promulgating the rule, avoids such a limiting result.

## II. DISQUALIFYING THE IME PHYSICIAN

[¶ 23] Although I would defer to the Board's rulemaking authority, I would conclude that, in the present case, the hearing officer acted beyond his discretion in accepting and relying on the testimony of the physician who was designated as the IME, given the doctor's steadfast refusal to answer reasonable and pertinent questions concerning his ties to industry.

[¶ 24] The Board rules provide guidance as to what factors may be relevant to the disqualification issue:

> The independent medical examiner must disclose potential conflicts of interest that may result from a relationship(s) with industry, insurance companies, and labor groups. A potential conflict of interest exists when the examiner, or someone in their immediate family, receives something of value from one of these groups in the form of an equity position, royalties, consultantship, funding by a research grant, or payment for some other service. If the independent medical examiner performs equivalent examinations as an employee of another organization, potential conflicts of interest may arise from that organization's contracts with industry, insurance companies, and labor groups.

Me. W.C.B. Rule, ch. 4, § 2(6)(C).

[¶ 25] We have previously upheld a hearing officer's disqualification of an IME for excessive ties to industry. In *Laskey v. S.D. Warren Co.*, 2001 ME 103, ¶¶ 12–14, 774 A.2d 358, 361–62, the hearing officer disqualified an IME on the basis of evidence of bias that came out during the hearing. The record in *Laskey* suggested

that the IME had conducted numerous non-IME examinations.

> [The IME] at his deposition indicated that: (i) in the fifty-two weeks prior to the examination of Laskey, [the IME] performed, on average, between ten and twelve medical examinations per week; (ii) between 90% and 95% were section 207 examinations; and (iii) 95% of those examinations were for "insurance companies, employers or defense counsel." [The IME] testified that he charges $850 per examination, on average, and earns roughly $240,000 per year from medical exams. In addition, [the IME] testified that he earns roughly $90,000 per year treating employees and patients as medical director of the occupational health clinic at Goodall Hospital in Sanford. [The IME] also testified that he has acted as a consultant to five significant southern Maine employers.

*Id.* ¶ 13, 774 A.2d at 361–62 (footnotes omitted). We noted: "Taking [the IME's] testimony, estimating an average of ten to twelve medical exams a week, at his stated average fee of $850 per examination, would calculate to in excess of $400,000 per year from medical examinations." *Id.* ¶ 13 n. 5, 774 A.2d at 361.

[¶ 26] In order to determine an IME's potential bias, the hearing officer should, at a minimum, have information concerning (1) how many section 207 examinations were performed by the IME in the preceding fifty-two weeks and on whose behalf; (2) how much money was received in the performance of those examinations; (3) how much of the doctor's total income is related to these examinations; and (4) whether and how often the doctor has performed IMEs for the particular employer or employee or insurer or law firms involved in the present case. Other areas of inquiry could include (1) whether a member of the IME's immediate family has substantial ties to industry that may reflect bias; (2) the number of examina-

tions an IME may have performed outside the workers' compensation context and for whom; (3) whether the IME has received "something of value" from "industry, insurance companies, and labor groups" "in the form of an equity position, royalties, consultantship, funding by a research grant, or payment for some other service;" or (4) whether the IME "performs equivalent examinations as an employee of another organization," and the extent of "that organization's contracts with industry, insurance companies, and labor groups." Me. W.C.B. Rule, ch. 4, § 2(6)(C).

[¶ 27] It is apparent from the record that the IME in this case made a deliberate choice not to answer specific questions concerning his ties to industry.[8] A hearing officer cannot perform the essential function of determining IME bias if the IME refuses to cooperate with a reasonable inquiry into his or her ties to industry or labor.[9] Because of the importance of the IME to workers' compensation practice, I would conclude that the refusal of the physician to cooperate, together with his professions of ignorance concerning basic financial and business matters, create the appearance of bias and were grounds for his disqualification without the necessity of obtaining further evidence.

---

8. The doctor in *Laskey* took a similar approach. As we stated in that case:

> Prior to the deposition, [the employee] posed several questions through interrogatories seeking information regarding [the IME's] industry ties and examinations in workers' compensation proceedings in the preceding fifty-two weeks. [The IME] refused to answer the interrogatories, stating at his deposition that the interrogatories were: "a waste of my time, and I have more important things to do with my time than that, and so does my staff."

2001 ME 103, ¶ 12, 774 A.2d at 361.

9. The hearing officer appears also to have had concerns about the IME's refusal to provide information, but suggested that the employee waived his ability to challenge the doctor based on bias, because the employee "continued with his deposition." We agree with Lydon that Lydon's failure to discontinue the *deposition should not be considered a waiver* of his objection to the IME on the basis of bias.