2005 ME 38

Oreta **BRIDGEMAN**

v.

**S.D. WARREN COMPANY et al.**

**Kevin Mitchell**

v.

**United Parcel Service et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 20, 2004.
Decided: March 16, 2005.

James J. MacAdam (orally), Anna Priluk, MacAdam Law Offices, P.A., Portland, for Oreta Bridgeman.

Kevin M. Noonan (orally), McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for Kevin Mitchell.

Thomas R. Kelly (orally), Thomas Quartararo, Robinson Kriger & McCallum,

Portland, Richard D. Tucker (orally), Tucker & Dostie, P.A., Bangor, for S.D. Warren Co.

John P. Flynn III (orally), Troubh Heisler Piampiano Hark Andrucki, Portland, for United Parcel Service.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] In this consolidated appeal, the employers, S.D. Warren Co. and United Parcel Service (UPS), appeal from decisions of hearing officers of the Workers' Compensation Board challenging the validity of Me. W.C.B. Rule, ch. 1, § 1, the fourteen-day rule, pursuant to which employers can become liable for the payment of short-term total incapacity benefits for failing to controvert a workers' compensation claim within fourteen days of the receipt of that claim. The S.D. Warren employee, Oreta Bridgeman, also cross appeals, alleging, in part, that pursuant to the rule, he is entitled to past due benefits beginning on the date of the incapacity and not the date that the employer received notice of the claim. We affirm the decision in *Mitchell v. UPS*. In doing so, we conclude that the hearing officers correctly upheld the validity of the fourteen-day rule. We also agree, in part, with Bridgeman's challenge to the decision in his case and vacate part of that decision.

## I. BACKGROUND

### A. *Bridgeman v. S.D. Warren Co.,* WCB–03–608

[¶ 2] Bridgeman filed petitions for award for several work-related injuries while employed by S.D. Warren. The hearing officer (*McCurry, HO*) granted some, but not all, of the petitions and concluded that Bridgeman is entitled to compensation for partial incapacity. The hearing officer further found that S.D. Warren and its insurer, Liberty Mutual, received notice of two of the compensable claims in May of 2001. The hearing officer concluded that Liberty Mutual violated Board Rule, ch. 1, § 1 by failing to file the required notice of controversy within fourteen days of the employee's notice of the claim. The notice of controversy was not filed until August of 2001. Moreover, the employer did not pay past due benefits at the time the notice of controversy was filed.

[¶ 3] As a result of this violation of the fourteen-day rule, and pursuant to its provisions, the hearing officer awarded continuing total incapacity compensation to Bridgeman beginning on the date that Bridgeman's petitions were filed and continuing until the employer files a notice of controversy "and pays the compensation that was due." We granted S.D. Warren's petition for appellate review and Bridgeman's cross-petition pursuant to 39–A M.R.S.A. § 322 (2001).

### B. *Mitchell v. UPS,* WCB–03–564

[¶ 4] Kevin Mitchell suffered work-related injuries to his left knee in September and December of 2000 while employed by UPS. In November of 2001, UPS received notice of Mitchell's claim seeking workers' compensation incapacity benefits beginning May 15, 2001, but failed to file a notice of controversy until May of 2002. UPS also failed to pay past due benefits at that time.

[¶ 5] The hearing officer (*Sprague, HO*) granted Mitchell's petitions for award, but found that he is entitled only to protection of the Act because the injuries did not result in ongoing incapacity. The hearing officer concluded further, however, that UPS violated Board Rule, ch. 1, § 1 by failing to controvert the claim within fourteen days of receiving notice of the claim, and by failing to contemporaneously pay past due benefits when the notice of con-

troversy was filed late. Applying the rule, Mitchell was awarded short-term total incapacity benefits beginning on the date of the incapacity, May 15, 2001. We granted the employer's petition for appellate review pursuant to 39–A M.R.S.A. § 322, and consolidated the case with *Bridgeman* for the purposes of oral argument.

## II. DISCUSSION

A. Validity of the Rule

██ [¶ 6] The employers in this consolidated appeal challenge the validity of Board Rule, ch. 1, § 1, contending that the rule is in conflict with the statutory language and, therefore, *ultra vires.*

[¶ 7] Board Rule ch. 1, § 1 provides, in pertinent part:

§ 1. Claims for Incapacity and Death Benefits

1. Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:

A. Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or

B. Pay without prejudice and file a Memorandum of Payment checking "Voluntary Payment Pending Investigation" in Box 18; or

C. Deny the claim and file a Notice of Controversy.

2. *If the employer fails to comply with the provisions of Rule 1.1, the employee must be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. § 205(2) and in compliance with 39–A M.R.S.A. § 204.*[1] *The requirement for payment of benefits under this subsection automatically*

*ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.*

3. Payment under Section 1.2 requires the filing of a Memorandum of Payment.

4. Benefits paid under this section are indemnity payments and are credited toward future benefits in the event that benefits are ordered or paid.

5. Failure to comply with the provisions of Rule 1.1 may also result in the imposition of penalties pursuant to 39–A M.R.S.A. §§ 205(3), 359, and 360.

Me. W.C.B. Rule, ch. 1, § 1 (emphasis added).

[¶ 8] Board Rule, ch. 1, § 1 was promulgated to implement section 205, which provides, in pertinent part:

1. **Prompt and direct payment.** Compensation under this Act must be paid promptly and directly to the person entitled to that compensation at the employee's mailing address, or where the employee designates, without an award, except in cases when there is an ongoing dispute.

2. **Time for payment.** The first payment of compensation for incapacity under section 212 or 213 is due and payable within 14 days after the employer has notice or knowledge of the injury or death, on which date all compensation then accrued must be paid. Subsequent incapacity payments must be made weekly and in a timely fashion. Every insurance carrier, self-insured and group self-insurer shall keep a record of all payments made under this Act and of the time and manner of making the payments and shall furnish reports, based

1. Section 204 provides: "Compensation for incapacity to work is not payable for the first 7 days of incapacity .... In case incapacity continues for more than 14 days, compensation is allowed from the date of incapacity." 39–A M.R.S.A. § 204 (2001).

upon these records, to the board as it may reasonably require.

3. **Penalty for delay.** When there is not an ongoing dispute, if weekly compensation benefits or accrued weekly benefits are not paid within 30 days after becoming due and payable, $50 per day must be added and paid to the worker for each day of 30 days in which benefits are not paid. Not more than $1,500 in total may be added pursuant to this subsection....

....

7. **Memorandum of payment.** Upon making the first payment of compensation for incapacity or upon making a payment of compensation for impairment, the employer shall immediately forward to the board a memorandum of payment on forms prescribed by the board....

39–A M.R.S.A. § 205 (2001).

[¶ 9] The Board's rulemaking authority derives from 39–A M.R.S.A. § 152, which provides:

Subject to any applicable requirements of the Maine Administrative Procedure Act, the board shall adopt rules to accomplish the purposes of this Act. Those rules may define terms, prescribe forms and make suitable orders of procedure to ensure the speedy, efficient, just and inexpensive disposition of all proceedings under this Act.

39–A M.R.S.A. § 152(2) (2001) (footnote omitted). Along with its duty to administer the Act, the Board is required to monitor cases to ensure that "[p]ayments are initiated within the time limits established in section 205." 39–A M.R.S.A. § 153(1)(A) (2001). Moreover, the mission of the Board is "to serve the employees and employers of the State fairly and expeditiously by ensuring compliance with the workers' compensation laws, *ensuring the prompt delivery of benefits legally due* ...." 39–A M.R.S.A. § 151–A (2001) (emphasis added).

[¶ 10] The legislative history of the creation of the Board suggests that it was intended to exercise wide discretion in its administration of the Act. Unlike the former Workers' Compensation Commission,[2] the newly created eight-member Board was equally divided between representatives of labor and management, all serving as part-time members. 39–A M.R.S.A. § 151(1) (2001). The Legislature recognized that the necessarily informal, ad hoc, and inherently political nature of Board decision-making requires that the Board exercise broad authority to promulgate rules to serve the broader purposes of the Act, and to manage and govern the workers' compensation system.[3]

[¶ 11] We give great deference to Board rules interpreting the Act, and we have encouraged the Board to enact rules

---

**2.** The former twelve-member Workers' Compensation Commission was comprised of attorneys appointed by the Governor. *See* 39 M.R.S.A. § 91(1) (1989), *repealed by* P.L. 1991, ch. 885, § A–7.

**3.** As one Senator remarked:

Essentially, what we're trying to do here is to change from the old system to a new system. The new system is the Worker's Compensation Board that would be governed by employers and employees. It will not be a Commission under the present framework which is run by attorneys.

7 Legis. Rec. S–29 (3d Spec. Sess. 1992) (Statement of Sen. Collins); 7 Legis. Rec. S–53 (3d Spec. Sess. 1992) (Statement of Sen. Esty) ("I have hope that next year we will not see workers' compensation bills from the Governor, ... from the Republican Party, ... [or] from the Democratic Party, we will see consensus and ideas from the new management and labor board ... created by this legislation."); 7 Legis. Rec. H–39 (3d Spec. Sess. 1992) (Statement of Rep. Rand) (an important purpose of the reform was "that the Workers' Compensation System ... be turned over and put under the management of Management and Labor").

to fill in the "gray areas" that were intentionally left in the Act. *See, e.g., Russell v. Russell's Appliance Serv.*, 2001 ME 32, ¶ 10 n. 3, 766 A.2d 67, 71; *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 588 n. 2 (Me.1996). "[T]he Act reflects not so much a legislative intent to comprehensively address every workers' compensation issue in a detailed and specific way, but to commit some issues to a process in which the participants in the system, labor and management, can work out flexible and realistic solutions." *Russell*, 2001 ME 32, ¶ 10 n. 3, 766 A.2d at 71 (quoting *Bureau*, 678 A.2d at 588 n. 2).

[¶ 12] Although we have struck down Board rules when they have been in direct conflict with express statutory language, *see, e.g., Lydon v. Sprinkler Servs.*, 2004 ME 16, ¶ 15, 841 A.2d 793, 798 (striking down a Board rule that would permit independent medical examiners who have performed exams on behalf of employers in the preceding fifty-two weeks); *Beaulieu v. Me. Med. Ctr.*, 675 A.2d 110, 111 (Me. 1996) (striking down a Board rule on the inclusion of fringe benefits in the average weekly wage), we find no such direct conflict between Board Rule, ch. 1, § 1 and the language of section 205.

[¶ 13] Pursuant to section 205, an employer receiving notice of a claim of workers' compensation benefits has the option, initially, to pay benefits voluntarily without accepting liability and without a formal Board proceeding. 39–A M.R.S.A. § 205. The Act, in concert with the Board rules, establishes a three-step system that applies when an employer does not pay benefits voluntarily. First, the case is referred to a troubleshooter. 39–A M.R.S.A. § 153(2) (2001); Me. W.C.B. Rule, ch. 1, § 6(1). Next, if the troubleshooter is unable to resolve the issue informally, the case will then go to mediation. 39–A M.R.S.A. §§ 307(5), 313(2) (2001); Me. W.C.B. Rule, ch. 1, § 6(1); ch. 11, § 1. If the mediation is unsuccessful, the case may either be referred to arbitration, 39–A M.R.S.A. § 314 (2001), or assigned for a formal hearing before a hearing officer, 39–A M.R.S.A. § 315 (2001).

[¶ 14] An employer's failure to voluntarily pay benefits is therefore the triggering event for all subsequent proceedings to determine the compensability of an injury and to award benefits if benefits are due. The filing of a notice of controversy gives notice to the employee and to the Board of an employer's intent to contest a claim. By promulgating Board Rule, ch. 1, § 1, the Board reasonably sought to encourage the timely filing of a notice of controversy to facilitate the administrative process and to ensure "the speedy, efficient, just and inexpensive disposition of all proceedings under this Act," 39–A M.R.S.A. § 152(2), and "the prompt delivery of benefits legally due," 39–A M.R.S.A. § 151–A.

[¶ 15] Although the rule attaches a greater penalty for an employer or insurer's failure to file a timely notice of controversy than provided in section 205, that does not compel a conclusion that the Board exceeded its authority in promulgating Rule, ch. 1, § 1 to implement the statute and carry out the purposes of the Act.

## B. Application of the Rule

 [¶ 16] Having concluded that Board Rule, ch. 1, § 1 is a valid rule, we next address the application of the rule, which is the subject of Bridgeman's cross-appeal. The hearing officer applied the provisions of Board Rule, ch. 1, § 1 to the employer because the employer failed to file a timely notice of controversy. The hearing officer, however, limited the obligation of S.D. Warren to pay benefits to a period beginning on the date that the employee filed petitions for award, rather than the earlier date of incapacity, as the rule requires.

[¶ 17] S.D. Warren contends that the hearing officer reasonably interpreted the

rule to require payment from the date the petitions were filed rather than the date of incapacity, because, according to S.D. Warren, the Board "did not intend its rule to encompass default payments for years of benefits prior to the date the claim was actually made." As Bridgeman contends, however, the rule very clearly states that "the employee must be paid total benefits ... *from the date of incapacity*," in the event of a fourteen-day rule violation. Me. W.C.B. Rule, ch. 1, §1(2) (emphasis added). We are bound by the plain language of the rule, and based on that plain language, we agree with Bridgeman that it was error for the hearing officer to award total incapacity benefits from the date the petition was filed rather than from the date of incapacity.[4]

The entry is:

The decision of the Hearing Officer of the Workers' Compensation Board in *Mitchell v. UPS*, WCB–03–564, is affirmed. The decision of the Hearing Officer of the Workers' Compensation Board in *Bridgeman v. S.D. Warren Co.*, WCB–03–608, is vacated in part and remanded to the Workers' Compensation Board for further proceedings consistent with this opinion

DANA, J., files dissenting opinion, in which SAUFLEY, C.J., joins.

DANA, J., with whom SAUFLEY, C.J., joins, dissenting.

[¶ 18] I respectfully dissent. I agree with the Court that we must give great deference to rules promulgated by the Workers' Compensation Board that carry out the purposes of the Act and fill in the "gray areas" that were intentionally left in the Act. *See, e.g., Russell v. Russell's Appliance Serv.*, 2001 ME 32, ¶ 10 n. 3, 766 A.2d 67, 71; *Bureau v. Staffing Network, Inc.*, 678 A.2d 583, 588 n. 2 (Me.1996). Nevertheless, because Me. W.C.B. Rule, ch. 1, § 1.2[5] provides a penalty for an employer's failure to controvert a claim that conflicts with both the statute and the

---

**4.** Bridgeman raises two additional issues in his cross-appeal. Although the hearing officer found that Bridgeman suffered a gradual mental stress injury on August 6, 1999, the hearing officer denied his claim because Bridgeman failed to give timely notice of the injury to his employer. *See* 39–A M.R.S.A. § 301 (2001). Bridgeman contends that his failure to provide timely notice was excused by a "mistake of fact" as to the nature or the work-relatedness of the injury. We conclude, however, that there is ample competent evidence in the record to support the hearing officer's finding that the employee understood the work-related nature of his mental condition long before the time that he gave his employer notice of that injury.

Bridgeman further contends that, even if the hearing officer did not err in denying his petition for his psychological condition, the hearing officer is obligated to consider that psychological condition in determining the employee's post-injury earning capacity. We conclude that the hearing officer's determination of Bridgeman's post-injury earning capacity was based on the totality of the employee's condition, including his psychological condition. We are not convinced that the hearing officer "apportioned out" any factors related to his psychological condition in making this determination.

**5.** Board Rule, ch. 1, § 1, provides, in pertinent part:

§ 1. Claims for Incapacity and Death Benefits

1. Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:
 A. Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or
 B. Pay without prejudice and file a Memorandum of Payment checking "Voluntary Payment Pending Investigation" in Box 18; or
 C. Deny the claim and file a Notice of Controversy.
2. If the employer fails to comply with the provisions of Rule 1.1, the employee must

intent of the Legislature, I conclude that the rule in this case is ultra vires. *See, e.g., Lydon v. Sprinkler Servs.*, 2004 ME 16, ¶¶ 12, 15, 841 A.2d 793, 797–98 (holding Board rule invalid that would permit section 207 examinations by independent medical examiners who have performed exams on behalf of employers in the preceding fifty-two weeks); *Beaulieu v. Me. Med. Ctr.*, 675 A.2d 110, 111 (Me.1996) (holding Board rule invalid to the extent that it conflicts with the statutory language regarding the inclusion of fringe benefits in the average weekly wage).

[¶ 19] The language of section 205 [6] should not be read in a vacuum, but should be read in the context of the legislative history of employer penalties for failure to controvert a claim. In the early 1980s, the Legislature adopted the controversial "early pay system," whereby the failure of an employer to file a notice of controversy within rigid statutory time frames created a "compensation payment scheme," in which the employer was deemed to accept the employee's claim of injury. *See* 39 M.R.S.A. § 51–B(7) (1989), *repealed by* P.L. 1991, ch. 885, § A–7. The purpose of the "early pay system" was to encourage informal acceptance of claims and reduce attorney involvement. *See Wentworth v.*

*Manpower Temp. Servs.*, 589 A.2d 934, 938 (Me.1991); *Stickles v. United Parcel Serv.*, 554 A.2d 1176, 1178 (Me.1989); L.D. 1322, Statement of Fact (111th Legis. 1983).

[¶ 20] After its adoption, the "early pay system" was a frequent subject of legislative debate and some of the more draconian aspects of the early pay system were mitigated even before its ultimate repeal. For instance, in 1989 the statute was amended to remove the requirement that the employer must file a memorandum of payment when paying medical expenses, *see* P.L. 1989, ch. 256, §§ 2, 3 (114th Legis. 1989) (codified as amended at 39 M.R.S.A. § 51–B(5), (7) (Supp.1989), *repealed by* P.L. 1991, ch. 885, § A–7), and then was amended again in 1991 to permit employers to pay benefits without prejudice, P.L. 1991, ch. 615, § C–3 (115th Legis. 1991) (codified as amended at 39 M.R.S.A. § 51–B(8) (Supp.1991), *repealed by* P.L. 1991, ch. 885, § A–7). The early pay system was repealed in its entirety by the Workers' Compensation Act of 1992, P.L. 1991, ch. 885, § A–7. *See generally* Statements of Sen. Gauvreau, Legis. Rec. S–47 (3d Spec. Sess. 1992) (discussing history of early pay system).

[¶ 21] The minutes of the Board meetings prior to the adoption of Me. W.C.B.

---

be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. § 205(2) and in compliance with 39–A M.R.S.A. § 204. The requirement for payment of benefits under this subsection automatically ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.

Me. W.C.B. Rule, ch. 1, § 1.

6. Section 205 provides, in pertinent part:

**2. Time for payment.** The first payment of compensation for incapacity under section 212 or 213 is due and payable within 14 days after the employer has notice or knowledge of the injury or death, on which date all compensation then accrued must be paid. Subsequent incapacity payments

must be made weekly and in a timely fashion. Every insurance carrier, self-insured and group self-insurer shall keep a record of all payments made under this Act and of the time and manner of making the payments and shall furnish reports, based upon these records, to the board as it may reasonably require.

**3. Penalty for delay.** When there is not an ongoing dispute, if weekly compensation benefits or accrued weekly benefits are not paid within 30 days after becoming due and payable, $50 per day must be added and paid to the worker for each day over 30 days in which benefits are not paid. Not more than $1,500 in total may be added pursuant to this subsection....

39–A M.R.S.A. § 205 (2001).

Rule, ch. 1, § 1.2 suggest that the rule was precipitated by the decisions of at least two hearing officers that the failure to pay benefits within fourteen days created a "compensation scheme." The term "compensation scheme" appears to be a throwback to the former title 39 early pay system.

[¶ 22] Section 205, however, does not mandate that an employer controvert a claim within fourteen days. The statute expressly requires that the employer file a memorandum of payment upon making the first payment of compensation, 39–A M.R.S.A. § 205(7) (2001), but does not require the employer to file a notice of controversy within fourteen days or at any time. The plain language also does not compel the conclusion that an employer who files an untimely notice of controversy must pay benefits that have accrued up to that time. Section 205 provides that payment must be made within fourteen days *if there is no ongoing dispute.* The statute does not state that the filing of a notice of controversy is required to memorialize an ongoing dispute.

[¶ 23] In light of the clear legislative intent to repeal the former "early pay system," I conclude that the Board exceeded its authority in promulgating Me. W.C.B. Rule, ch. 1, § 1.2 creating a substantive penalty for failing to controvert a claim that is not contemplated in the Act. I see no authority in the Act for the Board to order employers to pay total incapacity benefits in cases when benefits are otherwise not legally due, simply because the employer failed to notify the Board in writing that it was controverting the claim.

[¶ 24] Further, because the rule expressly requires that an employer who fails to controvert a claim in writing within fourteen days must retroactively pay benefits back to "the date of incapacity," an employer can be required to pay benefits for a period of time beginning long before any formal claim was actually made. Because I conclude that the Board rule makes a significant substantive change in the law that contravenes the legislative intent, I would vacate the hearing officer's decision in this case.