2006 ME 78

**Nadya PEARSON**

v.

**FREEPORT SCHOOL DEPARTMENT
et al.**

Supreme Judicial Court of Maine.

Argued: April 12, 2006.
Decided: June 27, 2006.

Mark A. Cloutier, Esq. (orally), Cloutier, Barrett, Cloutier & Conley, P.A., Portland, for employee.

Stephen W. Moriarty, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] Nadya Pearson appeals from a decision of a Workers' Compensation Board hearing officer (*Sprague, HO* ) finding that Pearson's mental stress injury is not compensable under the Workers' Compensation Act, and that the Freeport School Department did not violate the "fourteen-day rule," *see* Me. W.C.B. Rule, ch. 1, § 1, by failing to timely pay benefits or file a notice of controversy in response to her claim. Pearson contends that the hearing officer erred in concluding that no fourteen-day rule violation took place. We disagree, and affirm the decision.

I. BACKGROUND

[¶ 2] Nadya Pearson has been a teacher at the George C. Soule Elementary School in Freeport since 1989. The school is structured differently from most elementary school programs in that parents and students select their math and language arts teachers and the elective courses they pursue. In addition, parents and students can choose for the student to stay with the same teacher for up to three consecutive years. Pearson testified that the demands on teachers in this program are more intense than in ordinary schools because the teachers are with students the entire school day with no breaks, have meetings after school almost every day, and must do all preparation work outside of school time. She typically worked eleven to twelve hours per day.

[¶ 3] At the end of May 2002, Pearson informed the school's principal that she had been hospitalized over a four-day period for depression, and that she believed her symptoms had been aggravated by work-related stress. She requested a leave of absence for the upcoming school year, which the School Board granted, and she subsequently took off the 2002–2003 school year without pay. She was paid her regular salary through August 28, 2002.

[¶ 4] The procedural history most relevant to the application of the fourteen-day rule to this case began on January 23, 2003, when Pearson told the School Department's business manager that the reason for her leave of absence was depression aggravated by work-related stress. The business manager filed a first report of injury, and a notice of controversy was filed shortly thereafter. *See* 39–A M.R.S. § 303 (2005); Me. W.C.B. Rule, ch. 1, § 1. The business manager documented the date of injury as August 29, 2002, the first full day she was aware that Pearson had missed work allegedly due to work-related stress.

[¶ 5] Pearson filed petitions for award of benefits and for medical payments on October 27, 2003, listing March 19, 2002, and August 29, 2002, as the dates of injury, and August 29, 2002, as the date of incapacity. In response, on November 14, 2003, the School Department filed a second first report of injury and notice of controversy with respect to the March 19, 2002, date of injury, as well as a memorandum of payment. The memorandum of payment form

reflected that the employer was making a mandatory payment in the amount of $50 for the seventeen-day period from October 29, 2003, through November 14, 2003, because its notice of controversy was not timely pursuant to Me. W.C.B. Rule, ch. 1, § 1.

[¶ 6] Before the hearing officer, the School Department took the position that Pearson's notice of her injury was untimely, see 39–A M.R.S. § 301 (2005),[1] while Pearson asserted a fourteen-day rule violation based on Me. W.C.B. Rule, ch. 1, § 1. The hearing officer determined that Pearson gave timely notice of her injury based on the May 2002 report to the principal, but declined to find a fourteen-day rule violation because he found that the first time the School Department had notice or knowledge of a claim for incapacity benefits was January 23, 2003. He further determined that the notice of controversy filed within fourteen days of that date was sufficient to cover both alleged dates of injury because the March injury and August injury "are actually one and the same" and constituted "one continuum" for the same injury. The hearing officer concluded that it was "clear from the date that the employer filed its first Notice of Controversy on January 24, 2003, that [it was] controverting the employee's claim for emotional stress," and there was, therefore, no violation of the fourteen-day rule.

[¶ 7] On the substance of the claim, the hearing officer determined that Pearson did not establish by clear and convincing evidence that she "was subjected to extraordinary and unusual stress greater than that experienced by the average employee in the state of Maine," and denied compensation for her mental stress injury. See 39–A M.R.S. § 201(3) (2005).

[¶ 8] After the hearing officer declined to issue additional findings of fact and conclusions of law, Pearson filed a petition for appellate review, which sought review of the fourteen-day rule issue only. We granted the petition pursuant to 39–A M.R.S. § 322 (2005).

## II. DISCUSSION

### A. Employer's Notice of Controversy and Memorandum of Payment

[¶ 9] Pearson contends that the School Department formally acknowledged a fourteen-day rule violation in its memorandum of payment filed on November 14, 2003. She argues that this document conclusively establishes that a rule violation took place and that she is entitled to payment from August 29, 2002, the date of her incapacity, as required by the rule and *Bridgeman v. S.D. Warren Co.*, 2005 ME 38, ¶ 17, 872 A.2d 961, 966, and not from October 27, 2003, the date of her petition and the date from which the School Department calculated its $50 benefit payment.[2]

---

1. Title 39–A M.R.S. § 301 (2005) provides in relevant part:

   Proceedings for compensation under this Act, except as provided, may not be maintained unless a notice of the injury is given within 90 days after the date of injury. The notice must include the time, place, cause and nature of the injury, together with the name and address of the injured employee. . . .

   The notice . . . may be given to the general superintendent or to the supervisor in charge of the particular work being done by the employee at the time of the injury.

2. Accordingly, Pearson asserts that the hearing officer erred in the application of a Board Rule to the facts. "We will not overturn a decision of a Workers' Compensation Board hearing officer unless it can be said that the Board lacks a rational basis for its application of law to the facts." *Celentano v. Dep't of Corr.*, 2005 ME 125, ¶ 7, 887 A.2d 512, 514 (quotation marks omitted).

[¶ 10] The fourteen-day rule requires that an employer accept a claim or file a notice of controversy within fourteen days of "notice or knowledge of a claim for incapacity or death benefits." Me. W.C.B. Rule, ch. 1, § 1.[3] If the employer files the notice of controversy beyond fourteen days, it must pay total benefits from the date of incapacity to the date of the filing of the notice of controversy. *Id.* The obligation stops when the notice is filed along with payment of all accrued benefits. *Id.*

[¶ 11] In *Bridgeman,* 2005 ME 38, ¶¶ 10–15, 872 A.2d at 964–65, we determined that the fourteen-day rule constitutes a valid exercise of the Board's authority to implement the Act. We also held in *Bridgeman* that upon a violation, an employer is obligated to pay total benefits, not from the date the employee's petition was filed, but from the date of the employee's incapacity. *Id.* ¶ 17, 872 A.2d at 966.

[¶ 12] The hearing officer found that the first time the School Department had knowledge or notice of any claim for incapacity benefits was on January 23, 2003, when Pearson spoke to the School Department's business manager, and that the School Department filed a timely notice of controversy thereafter. The hearing officer further determined that the notice of controversy was sufficient to cover both alleged dates of injury because the March and August dates constituted "one continuum for the same injury."

■ [¶ 13] The hearing officer's factual finding that there was only one continuous injury is final and not subject to appellate review. *See* 39–A M.R.S. § 318 (2005). Because there was only one continuing injury, the School Department's first notice of controversy filed in January 2003 was compliant with the fourteen-day rule, and the School Department's second notice of controversy filed in November 2003 was redundant of the earlier notice and not required. The notice of controversy filed in January 2003 fulfilled its purpose of "giv[ing] notice to the employee and to the Board of an employer's intent to contest a claim," *Bridgeman,* 2005 ME 38, ¶ 14, 872 A.2d at 965, as evidenced by the fact that by the time Pearson's petition was filed, her claim had already proceeded through the mediation phase of the workers' compensation process that had been initiated in response to the School Department's filing of the notice. *See* 39–A M.R.S. § 313 (2005).

---

3. The rule provides:

§ 1. Claims for Incapacity and Death Benefits

1. Within 14 days of notice or knowledge of a claim for incapacity or death benefits for a work-related injury, the employer or insurer will:
  A. Accept the claim and file a Memorandum of Payment checking "Accepted" in Box 18; or
  B. Pay without prejudice and file a Memorandum of Payment checking "Voluntary Payment Pending Investigation" in Box 18; or
  C. Deny the claim and file a Notice of Controversy.
2. *If the employer fails to comply with the provisions of Rule 1.1, the employee must be paid total benefits, with credit for earnings and other statutory offsets, from the date of incapacity in accordance with 39–A M.R.S.A. § 205(2) and in compliance with 39–A M.R.S.A. § 204.* The requirement for payment of benefits under this subsection automatically ceases upon the filing of a Notice of Controversy and the payment of any accrued benefits.
3. Payment under Section 1.2 requires the filing of a Memorandum of Payment.
4. Benefits paid under this section are indemnity payments and are credited toward future benefits in the event that benefits are ordered or paid.
5. Failure to comply with the provisions of Rule 1.1 may also result in the imposition of penalties pursuant to 39–A M.R.S.A. §§ 205(3), 359, and 360.

Me. W.C.B. Rule, ch. 1, § 1 (emphasis added).

■ [¶ 14] The memorandum of payment dated November 14, 2003, incorrectly reported a violation of the fourteen-day rule for the period from October 29, 2003, through November 14, 2003, resulting in the payment of $50 in benefits. Although the memorandum may have generated some confusion as to the status of Pearson's entitlement to benefits, that confusion was ameliorated by the School Department's contemporaneous filing of its second notice of controversy that unequivocally stated its intent to contest Pearson's claim for benefits. On these facts, it would be inconsistent with the fourteen-day rule's purpose of encouraging employers to promptly pay or controvert a claim by imposing the significant penalty contained in Me. W.C.B. Rule ch. 1, § 1, for what amounted to the School Department's over-compliance with the rule. *See Bridgeman,* 2005 ME 38, ¶ 14, 872 A.2d at 965.

[¶ 15] Accordingly, the hearing officer did not err in concluding that the November 2003 memorandum of payment did not undermine the School Department's preservation of its right to contest Pearson's benefits claim through its filing of a timely notice of controversy in January 2003.

## B. Notice of Injury

[¶ 16] Pearson also contends that the fourteen-day rule was violated because the hearing officer found, in the context of ruling on the School Department's notice defense, that the School Department had notice of Pearson's injury in May 2002.

■ [¶ 17] Contrary to Pearson's assertion, an employer's knowledge or notice of an injury does not equate to knowledge or notice of a claim that would give rise to a duty to pay benefits. In *Carroll v. Gates Formed Fibre Products,* 663 A.2d 23 (Me. 1995), we addressed whether an employee had given notice sufficient to trigger the employer's obligation to pay or controvert a claim pursuant to a former version of the Act.[4] We stated that although the statute did not necessarily require the employee to file a formal claim, it nevertheless contemplated

> some sort of claim or request by an employee. It would be impossible for an employer to know how much to pay ... without some indication of an employee's demand. And clearly there must be something to controvert before an employer can know what to file in its notice of controversy.[5]

4. The applicable statute was 39 M.R.S.A. § 51–B (3), (7) (1989), which required the employer to make compensation payments within fourteen days after "notice or knowledge of the injury," and provided that failure to controvert the claim within forty-four days of the event giving rise to the obligation to make payments "constitutes acceptance by the employer of the compensability" for the claim.

5. In *Carroll v. Gates Formed Fibre Products,* 663 A.2d 23, 24 (Me.1995), the employee suffered a head injury on her first day on the job, missed three days of work, and quit on the fifth day. She told her employer when she quit that " 'she did not like her job, was afraid of the machinery and got headaches from the noise.' " *Id.* at 25. We determined that this

was insufficient to put the employer on notice of a claim for incapacity benefits, stating:

> [A]lthough the employee may not be required to give affirmative notice of a claim in all cases, the employer must have some knowledge, either from the employee or from the circumstances of the injury, that it has an obligation to pay incapacity benefits before it will be deemed to have accepted an injury by failing to controvert a claim. *Id.; see also Stickles v. United Parcel Serv.,* 554 A.2d 1176, 1180 (Me.1989) (stating that under former early pay system, the employer's knowledge should include "what level of incapacity the employee claims" and noting that "claim" will sometimes "be only implicit and will require reconstruction by the Commission").

*Id.* at 25 (quotation marks omitted). Accordingly, an employer's notice that an employee may have suffered an injury is not synonymous with an employer's notice of an employee's claim for incapacity benefits. "[K]nowledge of the injury" pursuant to 39–A M.R.S. § 302 (2005) [6] differs from "notice or knowledge of a claim for incapacity ... benefits" pursuant to Me. W.C.B. Rule, ch. 1, § 1.

[¶ 18] In this case, the hearing officer found that the School Department did not have notice or knowledge of a claim until Pearson's conversation with the business manager in January 2003, at which time the business manager learned enough information to conclude that Pearson might be making a claim for workers' compensation benefits. Although Pearson had told the principal in May that her depression had been aggravated by work-related stress, she also requested unpaid leave time to recover. It was rational for the hearing officer to conclude that a demand or request for payment pursuant to the Act had not been made at that time, and that no rule violation had occurred.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is affirmed.

---

6. "Want of notice is not a bar to proceedings under this Act if it is shown that the employer or the employer's agent had knowledge of the injury." 39–A M.R.S. § 302 (2005).